## IV. CONCLUSION

Wexler, in my opinion, has proffered sufficient evidence to raise genuine issues of material fact in the case before us. I would therefore reverse the district court's grant of summary judgment, even if as appellate judges we might think that the weight of the evidence favors White's. Because I believe that my colleagues have usurped the jury's function in this case, I respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0125P (6th Cir.)
File Name: 01a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DONALD G. WEXLER,
        *Plaintiff-Appellant,*

        *v.*                                   No. 99-3929

WHITE'S FINE FURNITURE,
INC.,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00379—James L. Graham, District Judge.

Argued: October 31, 2000

Decided and Filed: April 19, 2001

Before: KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

———————————

### COUNSEL

**ARGUED:** John S. Marshall, Columbus, Ohio, for Appellant. James E. Davidson, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellee. **ON BRIEF:** John S. Marshall, Columbus, Ohio, for Appellant. James E.

Davidson, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellee.

KRUPANSKY, J., delivered the opinion of the court. BATCHELDER, J. (pp. 25-27), delivered a separate opinion concurring in the judgment. GILMAN, J. (pp. 28-40), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KRUPANSKY, Circuit Judge. In this action commenced pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, the plaintiff-appellant, Donald G. Wexler ("Wexler"), has assailed the district court's summary judgment for the defendant-appellee White's Fine Furniture, Inc. ("White's), by which it resolved that the plaintiff had failed to proffer legally sufficient direct or circumstantial evidence to support his *prima facie* case. Alternatively, the trial court directed that, even assuming *arguendo* the existence of adequate circumstantial proof buttressing the plaintiff's age discrimination charge, the defendant had proffered a valid nondiscriminatory reason for its faulted actions, whereas the plaintiff had not countered that reason with evidence of pretext legally sufficient to muster a triable jury question. On review, Wexler has argued that the record evidence created a triable inference of discriminatory intent, as well as of pretextual motive, by White's.

At all times material to the subject action, White's owned and operated several retail furniture outlets in the Columbus, Ohio vicinity. On September 9, 1993, Gordon Schiffman ("Schiffman"), who was White's president, chief executive officer, and (together with his two sons) the controlling shareholder, hired Wexler to work as a sales representative at the predominantly family-owned company's Morse Road store. On that date, Wexler was 55 years old, and Schiffman

### 2. Pretext

The lead and concurring opinions also conclude that, assuming arguendo that the prima facie case was satisfied, Wexler would be unable to prove to any reasonable trier of fact that the nondiscriminatory reason proffered by White's was pretextual. This analysis is also flawed.

To prove pretext, a plaintiff must show that the reason given by the employer had no basis in fact, did not motivate the discharge, or was never used in the past to discharge an employee. *See Godfredson v. Hess & Clark*, 173 F.3d 365, 373-74 (6th Cir. 1999). White's maintains that the primary reason for demoting Wexler was that the store was experiencing low revenue. Although a rational trier of fact might believe this explanation, there is sufficient contrary evidence that would support the conclusion that this reason was pretextual. The retention of Alvie Crank as Wexler's replacement-once-removed, for example, severely undermines the explanation that store revenue is critical to a store manager's job security. Nonetheless, the lead opinion dismisses the evidence regarding Crank as "non-probative" and adopts the explanation of White's as to why Crank was retained. This conclusion, which is based on the lead opinion's credibility determination and weighing of the evidence, again ignores the standard of review that we must apply at summary judgment.

Finally, Wexler produced evidence indicating that the decline in revenue was not his fault. He pointed to evidence showing that even the management of White's knew that their advertising strategy had damaged sales throughout the chain. If believed, a trier of fact could reasonably infer that the justification for the demotion had no basis in fact. This, plus the age-related statements of Schiffman and Lively, would permit a reasonable factfinder to infer that impermissible considerations had tainted their assessment of Wexler's performance as the store manager.

factors other than his performance and, further, he proffers evidence challenging the criticisms of his skills that White's now raises.

In *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir. 1999), a manager's employment was terminated when the portion of the business over which he had control was dropped due to low revenue. The employer, Hess & Clark, argued that the decrease in revenue was enough to find that the manager was not "meeting his employer's legitimate expectations."   *Id*. at 372.   Nevertheless, because the terminated manager had proof that he was not solely responsible for the drop in revenue, this court held that there was sufficient evidence to create a genuine issue of material fact on the qualifications prong of the prima facie case. *See id*. at 372. *Godfredson*'s analysis of this issue directly applies to the case at bar:

> Whether Godfredson was so qualified at the time of his termination is a close question. Certainly, [the] testimony [of the manager who terminated Godfredson] and the significant losses suffered by Hess & Clark . . . support a finding that Godfredson was not meeting his employer's legitimate expectations. [The] testimony [of the president of Hess & Clark], however, reveals that Godfredson was not necessarily the sole party at fault for this failure. Moreover, Godfredson worked satisfactorily at Hess & Clark for years prior to the pet food business's failure, and one can infer that he would not have been given significant responsibility . . . if his performance had been unacceptable.   For these reasons, we agree with the district court that Godfredson had raised a genuine issue of material fact as to this issue.

*Id*. Nevertheless, both the lead and concurring opinions ignore this precedent and conclude that Wexler was unqualified as a matter of law.

was approximately 64 years of age.[1]   As a floor salesman, Wexler received White's standard  compensation package, namely six percent commission on all delivered sales, with a guaranteed minimum annual salary of $20,000 (increased in 1996 to $25,000).   Any periodic salary payment which exceeded accrued commissions was distributed as a draw or advance against unearned future commissions.

Wexler's satisfactory performance on the sales floor, as well as his prior experience in the retail furniture industry, prompted Schiffman, on February 13, 1995, to promote the then-57-year-old Wexler to manager of the Morse Road store. Shortly thereafter, the plaintiff attended four extensive formal managerial training sessions, and subsequently benefitted from ongoing informal instruction by corporate supervisors. Based on his training and experience, Wexler understood that his duties as a store manager included, among other things, the counseling and supervision of subordinate personnel, the identification and correction of employee performance problems, and the replacement of malperforming or uncooperative sales representatives; as well as the creation of attractive furniture displays, the maintenance of the facility's overall appearance, the accurate recording of sales transactions, and the promotion of positive customer relations including the mailing of a "thank-you" note to each buyer. Most importantly, the plaintiff conceded at deposition that he knew that, as a store manager, Schiffman would hold him personally accountable for his location's aggregate sales figures.

Commencing in August 1996, the overall sales volume of the Morse Road store, as well as Wexler's personal sales

---

[1]Wexler was born on January 9, 1938.   Schiffman's affidavit disclosed that he was 69 years old during January 1999, but it did not reveal his precise birth date.

The population segment protected by the ADEA encompasses persons aged forty or more.  29 U.S.C. § 631(a); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 n.2 (6th Cir. 1994).

productivity, began a gradual decline. That cash flow problem alarmingly worsened between November 1996 and May 1997, when average monthly sales at Morse Road decreased 30.25%, and Wexler's personal sales declined 48% (or about $200,000), compared to the corresponding seven-month interval during the prior twelve-month period. In response to that continuing downward spiral, the defendant adjusted Wexler's remuneration formula, starting on March 1, 1997, to partially reflect the overall performance of the Morse Road store – White's reduced Wexler's commission on his personal sales from six to three percent, but concurrently entitled him, for the first time, to a commission of one and one-half percent on all delivered sales transacted by his subordinate staff members.

On June 9, 1997, Wexler, Schiffman, and David Lively ("Lively"), who was White's Executive Vice-President and owner of five percent of the concern's shares, met to discuss the Morse Road location's chronically low traffic. During that meeting, Schiffman expressed extreme dissatisfaction with the store's 24% decline in sales during the five-month period January through May 1997, and further chastised Wexler for specific deficiencies in his managerial performance, including consistently sloppy paperwork,[2] failure to counsel underperforming sales representatives, and inadequate store maintenance.[3]

---

[2] Wexler conceded that, throughout his tenure as a store manager, he had repeatedly been reprimanded for his failures to properly document transactions.

[3] Following that congregation, Wexler drafted a six-page handwritten response to the criticisms directed against him by the two corporate officers, by which he assigned blame for his managerial failures to other persons and/or external circumstances allegedly beyond his control. Wexler gave that statement to Schiffman on June 10, 1997.

Although generally self-congratulatory, that document opened with a concession by Wexler that his management performance had been deficient and that White's had duly warned him of his shortcomings:

neither of these conclusions is compelled by the record, particularly at the summary judgment phase of the case.

### 1. The prima facie case

Both opinions conclude that Wexler's case must fail because no rational trier of fact could find that Wexler was qualified for the position as store manager, thus failing the third requirement of a prima facie case. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997) (outlining the four factors of a prima facie case). This conclusion is flawed for two reasons.

First, the nondiscriminatory explanation proffered by White's is the dismal revenues at the Morse Road location during Wexler's tenure as store manager. The lead and concurring opinions suggest that this is enough to establish that Wexler failed to satisfy his initial burden under *McDonnell Douglas*. We may not, however, consider White's's alleged nondiscriminatory reason for demoting Wexler when analyzing the prima facie case. To do so would short circuit the burden-shifting analysis and deprive Wexler of the opportunity to show that the nondiscriminatory reason was pretextual. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").

Second, there is insufficient proof in the record for us to conclude that Wexler was unqualified, as a matter of law, because of the store's low revenues. The district court cites *McDonald v. Union Camp Corp.*, 898 F.2d 1155 (6th Cir. 1990), for the rule that a qualified individual must perform "at a level which met his employer's legitimate expectations." *Id.* at 1160 (quotations omitted). In *McDonald*, however, the plaintiff conceded that he was not performing at this level. *See id.* In contrast, Wexler disputes the contention that he was unqualified. He argues that the drop in sales was due to

Not only does the lead opinion apply inferences in the opposite direction from that required by *Anderson*, it also ignores crucial inferences in favor of Wexler that can be drawn from the evidence. For example, according to Schiffman, the primary reason for Wexler's demotion was the flagging profits at the Morse Road location of White's. Yet Alvie Crank, a subsequent and much younger manager, was retained despite similarly dismal profits. I recognize, as the lead opinion points out, that Crank was not the manager who directly replaced Wexler, and that the intervening replacement was terminated only five months after Wexler was demoted. Nonetheless, the lead opinion dismisses Crank's retention as the store's manager, calling it "entirely non-probative." Although the evidence regarding Crank is not as powerful as it would have been had he directly replaced Wexler, that does not diminish the fact that White's's willingness to retain Crank in the face of flagging sales calls into question Schiffman's veracity when he claimed that he would have retained Wexler but for the revenue problems. This is an inference that we must, at summary judgment, draw in favor of the nonmovant. Without any supporting authority, however, the lead opinion dismisses this evidence in a footnote. *See* Slip Op. at 15-16, n.11.

**B.  Sufficient evidence exists to support a rational trier of fact's conclusion that Wexler established a prima facie case of age discrimination, and that the nondiscriminatory reason proffered by White's was pretextual**

Although I believe that this case should be analyzed under the *Price Waterhouse* mixed-motive framework, I also believe that there is sufficient evidence to support a rational trier of fact's conclusion that Wexler satisfied the *McDonnell Douglas* burden-shifting analysis. Both the lead and concurring opinions correctly point out the phases of the burden-shifting regime, but they erroneously conclude that Wexler would be unable to establish either a prima facie case or a showing that the nondiscriminatory explanation for the demotion proffered by White's was pretextual. I believe that

On June 15, 1997, Schiffman and Lively advised Wexler that the company planned to demote him to his former position as a floor sales representative. The two corporate officers emphasized to Wexler that, although they were dissatisfied with his performance as a store manager,[4] they hoped that he would remain on White's sales staff. They expressed mutual confidence that he could contribute to the company in the future as a sales professional. As a partial inducement for him to accept the proposed re-assignment, the defendant offered Wexler the most generous compensation package ever bestowed upon one of its salesmen: Wexler's managerial compensation would continue through the balance of June 1997, and thereafter, he would accrue an *eight* percent commission on each of his personal consummated sales, rather than the standard six percent allotted to each of White's other salespersons. Moreover, the company agreed to forgive $4,500 in past salary advanced to Wexler as a draw against his as-yet-unearned commissions, despite its long-standing policy and practice of debiting such excess payments against the employee's unaccrued future commissions.

As purported support for his allegation that Schiffman demoted him by reason of age-driven animus, Wexler testified that, near the start of the June 15, 1997 assembly:

> Gordon [Schiffman] had a smile on his face, said he had read the paper that I had given him, and that most of what I had written was correct. However, they have decided to make a change.

---

I, by no means purport that my management style is perfect. I have made mistakes &, as they have been brought to my attention, tried to correct them.

[4] Via affidavit, Schiffman attested that, "[a]lthough Wexler had several performance deficiencies, the primary reason for replacing him [as the store manager] was the dramatic falloff in the store's sales and his personal sales."

He then said, you're 60 years old, aren't you, Don? I said, no, Gordon. I'm 59. I'll be 60 in January. He then said, well, we both have been in the business 117 years [sic -- 127?]. You don't need the aggravation, stress of management problems, customer problems, taking care of all these salespeople's problems that keep calling you on the phone all day every day.

Mr. Lively then interjected that they were going to really be grinding their managers in the future, and if they had to sweep floors or stay there until 11:00 p.m., they would do so. And he said it was stuff that I don't think you'd want to be doing.

Wexler also testified that, immediately prior to the June 15 meeting, he had observed Schiffman and Lively speaking with a "young man." That person was John Neilson ("Neilson"), an individual in his early thirties.

On the following day, June 16, 1997, Wexler verbally accepted Schiffman's reassignment proposal and graduated commission offer. Schiffman responded that he was pleased by Wexler's decision to remain on White's employment roster. Later that evening, Schiffman telephoned Wexler to clear with him the highlights of his planned announcement to the company staff regarding Wexler's departure from management. Without objection from Wexler, Schiffman suggested, manifestly to spare Wexler potential embarrassment, that he would "just mention that you're getting older, although not as old as I am."

Three days later, on June 19, 1997, Schiffman convened his employees to announce Wexler's downgrade to his former non-supervisory sales position. Wexler tape recorded that meeting. He has relied upon the following excerpt from Schiffman's oral address:

I'm going to share with you a conversation that Don Wexler, David Lively and I started in January. Don came back to my office one day and said Gordon, I've been in my management [sic] for a bunch of years, and I'm not

stereotyping from which an illegal intent could be proven. The evidence against the employer, in fact, was rather weak.

Finally, and most fatal to the lead opinion's application of the same-actor inference, is the fact that this court in *Buhrmaster* was reviewing a jury verdict and jury instructions. Indeed, rather than weighing the evidence, as the lead opinion does here, this court in *Buhrmaster* was simply evaluating the rationality of the jury's verdict, and whether or not the jury could legally apply such an inference.

Anticipating the critique that the same-actor inference is being prematurely applied in the present case, the lead opinion cites a case from the Fourth Circuit, *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991), in which that court urged early dismissal of same-actor inference cases. What the lead opinion fails to point out, however, is that in *Proud*, as in *Buhrmaster*, the evidence against the defendant was much weaker than in the case at bar. Furthermore, the *Proud* court emphasized that the same-actor inference is applicable to the pretext analysis, and the plaintiff had proffered no other proof to suggest that the employer's nondiscriminatory reason was a sham. *Proud*, 945 F.2d at 798. Thus, the same-actor inference in an evidentiary vacuum led the court to direct a verdict against Proud at the close of the plaintiff's proof at trial.

The difference between *Proud* and the case at bar is dramatic. Unlike *Proud*, in which the same-actor inference was applied to the pretext stage of the *McDonnell Douglas* burden-shifting analysis, Wexler has presented direct evidence of an impermissible motive, thus obviating his burden of proving pretext. Furthermore, Wexler's case, on the merits, is much stronger than the facts presented in *Proud*. The lead opinion nevertheless suggests that we should turn this permissive inference into a mandatory one to be applied in favor of a summary-judgment movant. Such a misapplication of a permissive inference is wholly contrary to the Supreme Court's opinion in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Instead of viewing the evidence most favorably for Wexler, the lead opinion simply states that these statements "did not evince prejudice, bigotry, or ill will towards the elderly, nor did they betray any adverse judgment(s) concerning Wexler's suitability for his managerial assignment which may have germinated from negative stereotypical assumptions against persons of advancing years." Slip Op. at 13-14. This conclusion not only ignores the fact that Rule 56 requires us to view all evidence in favor of the nonmoving party, but it also is based on an unwarranted deference to the "business judgment" defense.

Furthermore, under the *Cooley* standard, a factfinder could reasonably conclude that these statements evinced a discriminatory intent. They were made by the decision-maker, indicated a belief that a person's capabilities as a store manager diminish with age, and were directed at Wexler in the very meeting during which his demotion was announced. Indeed, *all* of the *Cooley* factors are satisfied. *See Cooley v. Carmike Cinemas Co.*, 25 F.3d 1325, 1330 (6th Cir. 1994) (holding that comments made by a supervisor about putting elderly people in concentration camps and feeling uncomfortable around older people were relevant and admissible to show employer bias).

The lead opinion concludes its application of Rule 56 by emphasizing the "same-actor" inference in favor of White's, while ignoring any other inferences that could be drawn from the evidence in favor of Wexler. In *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461 (6th Cir. 1995), this court adopted the same actor inference, "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Id*. at 463. Although it is undisputed that a finder of fact is permitted to draw this inference, it is in no way a mandatory one, and it may be weakened by other evidence. *See id*. at 464 (describing how the length of time between hiring and firing an employee may weaken the same-actor inference). Furthermore, the facts in *Buhrmaster* did not contain any direct evidence of

sure what I want to do. Maybe I should just be worrying about my own customer and not everyone else's customers. This is getting to be tiring.

At that time we were interviewing for managers, because we needed somebody for this store. But we did interview another guy that we thought was top drawer. We thought that he was just absolutely a terrific kid. He's about David's age, been in the furniture business about as long as David. He's about as intense as David is. He's a fine guy. His name is John Nielson [sic].

I think you will like him very much. He is a fine, proper young man. Don't be misled by his youth anymore than being misled by David Lively's youth.

Appellant's opening brief, pages 18-19. (Ellipse and note omitted).

Wexler conceded at deposition that Schiffman's June 19, 1997 presentation, during which he did not directly reference Wexler's age, was "gracious."

As additional evidence of the defendant's purported age-animated bias, Wexler attested that David Lively once, on an unspecified date, had offered, "out of respect for [Wexler's] age," to retrieve a pen from the floor which Wexler had dropped; had on another undated occasion described the plaintiff to an outside manufacturer's representative as "a bearded, grumpy old man;" and had occasionally addressed him as "pops" or "old man." However, Wexler conceded that he, in turn, had occasionally referred to Lively as "the kid."

Furthermore, Wexler challenged the veracity of White's stated reason for his demotion, namely significant long-term negative trends in sales at the Morse Road location, by offering his own testimony, together with affidavits from several co-workers, which attributed the sharp slump in sales figures primarily to factors extraneous to Wexler's mismanagement. According to the plaintiff, the major causes of his store's flagging profitability were a "soft market" in

retail furniture, a reduction in company advertising featuring the Morse Road store in deference to concentration upon promotion of two recently opened White's outlets, and the assignment of an excessive number of inexperienced trainees to Wexler's store who would later be re-deployed at the two new locations.

Additionally, the plaintiff's evidence, including co-worker affidavits and his own self-serving attestations, lauded selected aspects of his managerial performance. The plaintiff and his witnesses generally asserted that the plaintiff had made some efforts to train and counsel his subordinates, to improve enforcement of store cleanliness and maintenance standards, to ensure the prompt completion of merchandise deliveries and the mailing of follow-up "thank you" notes, to elevate sagging worker morale, and to reduce the incidents of recordkeeping errors. The plaintiff's witnesses praised him for his purported hard work and managerial professionalism.

Finally, Wexler has contended that his immediate successor, John Neilson, performed even less effectively than he had as the Morse Road store manager, and exhibited comparatively inferior managerial prowess. Store revenues continued to decline during Neilson's administration. However, White's *terminated* Neilson's employment approximately five months after hiring him as the Morse Road store manager, for the same reason that it had earlier dispatched Wexler -- continually decreasing revenues. It bears emphasis that, unlike Wexler, Neilson was *not* merely demoted and re-assigned within the company organization.

On April 9, 1998, Wexler launched his one-count complaint against White's in federal district court, by which he alleged that his descent from store manager to floor salesman constituted age discrimination in employment.[5]

---

[5]The Age Discrimination in Employment Act commands, in material part:

It shall be unlawful for an employer –

---

expose an adherence to a stigmatizing belief about older employees that was a motivating factor in the decision of White's to demote Wexler. Wexler has produced a series of statements by Schiffman and Lively which, if believed, indicate that age, at least in part, motivated their decision to demote him. The most damaging of these statements were those made by Schiffman and Lively on the very day of Wexler's demotion. On that date, Schiffman was quoted as having asked: "You are 60 years old aren't you?" After Wexler responded that he was in fact 59, Schiffman continued: "Well, we both have been in the business 117 years. You don't need the aggravation, stress of management problems, taking care of all these sales peoples' problems that keep calling you to the phone all day everyday." Schiffman has admitted making these statements, but discounted them as attempts to soften the blow to Wexler. Lively chimed in by telling Wexler that "they were going to really be grinding their managers in the future, and if they had to sweep the floors or stay there until 11:00 p.m., they would do so." According to Wexler, Lively said "it was stuff I don't think you'd want to be doing."

These statements made to Wexler at the time he was being demoted permit the inference that both the president and vice-president of White's adhered to the stereotype that an older manager cannot perform in a high-stress management position where the company would be pushing him to work harder and do more. These are the very stigmatizing beliefs of an underperforming older worker, as detailed in *Hazen Paper*, that the ADEA was intended to target. Nevertheless, instead of drawing inferences favorable to Wexler from these statements, the lead opinion elects to believe White's's explanation of them, and imposes its own credibility assessment on both parties. The widely differing perspectives on what these statements meant illustrate a classic example of a genuine issue of material fact, i.e., did White's hold stereotypical beliefs about the capabilities of older managers that motivated its decision to demote Wexler?

his deposition that he would have made the same employment decision irrespective of her race).

The lead opinion fails to recognize this precedent, and makes the contrary and legally unsupported statement that "[t]he mere recognition, by an employer, of the universally known truth that *certain individuals* (as opposed to *every* individual in the protected age-defined category) may experience declining personal capabilities as they approach the traditional age of retirement is not illegal." Slip Op. at 14. In other words, according to the lead opinion, the stereotype that peoples' capabilities decline with age is simply a "universally known truth," and, if mentioned in the context of an adverse employment decision, does not indicate a motivation that violates the ADEA. This assertion is contrary to the last quarter-century of antidiscrimination law. Notably, the Supreme Court has disagreed with the lead opinion's characterization of the aforementioned "universally known truth" when it declared that

> Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes. Although age discrimination rarely was based on the sort of animus motivating some other forms of discrimination, it was based in large part on stereotypes unsupported by objective fact.... Moreover, the available empirical evidence demonstrated that arbitrary age lines were in fact generally unfounded and that, as an overall matter, the performance of older workers was at least as good as that of younger workers.

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610-11 (1993) (citations and internal quotations omitted). Furthermore, the association of these stigmatizing beliefs with an adverse employment decision serves to create an issue of fact as to whether the employer was motivated, at least in part, by discriminatory intent based on those stereotypes.

In a mixed-motive case such as this one, then, we are asked to determine whether the officers' statements, if believed,

After discovery, the defendant moved for summary judgment.[6]  *See* Fed. R. Civ. P. 56.  On July 15, 1999,

---

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

29 U.S.C. § 623(a).

[6]"The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (brackets added).

The familiar standards governing summary judgments have been recently re-articulated by this court:

> A court may grant summary judgment under Fed. R. Civ. P. 56 only if, after construing the record evidence, and the reasonable inferences which may be drawn therefrom, most favorably for the party opposing the motion, the proof could not support a judgment in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (citation omitted). *See also Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

> All legal conclusions by lower courts are scrutinized *de novo*.  *Grider v. Abramson*, 180 F.3d 739, 746 n.7 (6th Cir.), *cert. denied*, 120 S. Ct. 528 (1999); *Brennan v. Township of Northville*, 78 F.3d 1152, 1154, 1156 (6th Cir. 1996). Hence, a lower court's summary judgment award is subject to plenary review, because the sufficiency of the record evidence, construed most favorably for the opponent of summary judgment, poses a question of law.  *See Doe v. Claiborne County*, 103 F.3d 495, 505 (6th Cir. 1996).  The touchstone is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

following briefing, the district court granted that motion, ruling that the plaintiff's evidence failed to support his *prima facie* case; and further, even if he had proved the elements of a circumstantial discrimination claim, he had failed to refute, via proof of pretext, the defendant's tendered permissible motivation for demoting him, namely its business judgment that the plaintiff was unfit for the managerial post, primarily because his store had experienced a long-term severe depression in its sales volume. The plaintiff's timely appeal followed.

A plaintiff may prove employment discrimination through *either* direct or circumstantial evidence of disparate treatment which had been propelled by animus against a legally protected characteristic. *See, e.g., Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000). "The direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet [his] burden with either method of proof." *Id*. at 523 (brackets added; citation and note omitted). Nonetheless, irrespective of whether the plaintiff's proof of disparate treatment is direct or circumstantial, the ultimate liability question is the same – "'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.' That is, the plaintiff's age must have 'actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2105 (2000) (brackets omitted; parentheses in original) (*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (citation omitted).

one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 251-52).

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 556-57 n.7 (6th Cir. 2000) (ellipse in original).

---

In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), Hopkins was denied a partnership position after a long review process in which the partners' input on each candidate was solicited. The remarks of some partners, when considered in the context of common stereotypes about women, indicated that at least some of the voting partners' actions were motivated by her gender. For example, she was criticized for "unfeminine" characteristics such as her clothing, the use of profanity, and her abrasive style. *See id*. at 234-36. Although the factual bases of these criticisms were not challenged by Hopkins, it was the veiled connection between these perceived character traits and her gender that led a majority of the Court to conclude that there was sufficient evidence that gender was a motivating factor in her being denied a partnership. *See id*. at 251.

Thus, criticisms of an employee's performance, even if true, which are linked to stereotypes associated with a plaintiff's membership in a protected class, fit squarely within the rubric of a mixed-motive analysis. In *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994), this court "expressly spelled out the[se] considerations as a formal standard" that must be applied when analyzing direct evidence of an illegal discriminatory motive:

In age discrimination cases, this court has examined statements allegedly showing employer bias by considering whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination.

*Id*. at 1330; *see also Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000) (holding that a supervisor's inclusion of a reference to the race of a plaintiff in a discipline report created a genuine issue of material fact regarding the employer's intent, even though the supervisor also stated in

proffer circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-04 (1973). Unlike the lead and concurring opinions, however, I believe that there is sufficient evidence to support a rational jury's conclusion that White's violated the ADEA under either evidentiary route.

**A.    Sufficient direct evidence exists to support a rational trier of fact's conclusion that White's demoted Wexler based, at least in part, on his age**

Under a mixed-motive analysis, a plaintiff must produce direct evidence that an employer considered both permissible and impermissible factors when it made the adverse employment decision at issue. *See Price Waterhouse*, 490 U.S. at 246. In an ADEA case, once a plaintiff has shown that an unfavorable employment decision was made at least in part because of age, the burden shifts to the employer to prove that it would have taken the same adverse action even if illegal factors had not entered into its decision. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840-41 (7th Cir. 1996) (analyzing direct evidence of discrimination in an ADEA case).

The lead opinion defines direct evidence as that "which, *if believed*, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Slip Op. at 11 (quoting *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (emphasis added)). When summary judgment is sought by the employer, that is precisely what we are supposed to do – believe the employee's direct evidence and all favorable inferences that flow from it. Summary judgment is appropriate only if no rational trier of fact could find for the plaintiff, even if this direct evidence is believed. In this case, Wexler has proffered statements by the officers of White's that, if believed, suggest that age was a motivating factor in their adverse employment decision. Nevertheless, the lead opinion inappropriately adopts White's's explanation of these statements, while ignoring the inferences in favor of Wexler that can be drawn from the evidence produced.

"*Direct evidence* [of employment discrimination] 'is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Weberg*, 229 F.3d at 522 (emphasis and brackets added) (*quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). If the plaintiff produces sufficient direct evidence of discrimination, "[t]he burden of persuasion then shifts to the defendant to show that it would have terminated the plaintiff's employment absent the discriminatory motive."[7] *Id.* (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

In the litigation *instanter*, Wexler has offered four statements by Schiffman, and two by Lively, as his foundational *direct* proof of White's alleged age-animated motivations for relieving him of his managerial responsibilities:[8]

---

[7] This court has distinguished the defendant's burden of *disproving* intentional discrimination supported by the plaintiff's *direct* evidence, from the defendant's burden of *production* to rebut a sustainable *circumstantial* inference of intentional discrimination:

"[O]nce the district court accepts the plaintiff's *direct evidence*, the employer's asserted nondiscriminatory reason, which is merely a burden of production under the *McDonnell Douglas* [circumstantial evidence] framework [discussed *infra*], essentially becomes an *affirmative defense upon which the employer bears the burden of proof.*"

*Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000) (emphases and brackets added) (paraphrasing *Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.3d 111, 115 (6th Cir. 1987)).

[8] It is noteworthy that the evidentiary record in the instant cause is entirely devoid of any evidence of an overall pattern of age-hostile remarks, or of a history of ageist employment decisions, by corporate decision-makers. *See, e.g., Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252-54 (6th Cir. 1998); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942-44 (6th Cir. 1987). To the contrary, Wexler conceded that he never heard Schiffman make any anti-elderly comments, knew of no fellow White's employee who had ever been treated unfavorably because

1.  "I'll just mention [as the reason for Wexler's demotion] that you're getting older." (Gordon Schiffman).

2.  Mr. Wexler is told as he is demoted: "You're sixty years old, aren't you, Don? You don't need the aggravation, stress of management problems, customer problems, taking care of all these salespeople's problems. . . ." (G. Schiffman).

3.  David Lively's references to Mr. Wexler's age, referring to him as an "old man" and a "grumpy old man."

4.  Mr. Lively told Mr. Wexler as he was demoted that White's was really going to be "grinding" their managers, making them do "stuff I don't think you'd want to be doing."

5.  The job was "getting to be tiring" for Mr. Wexler. (G. Schiffman).

---

of age, and knew that Schiffman's practice had always been to employ "good people" irrespective of age.

Wexler's highly material concessions were corroborated by record proof that White's had at all relevant times been an exemplary employer of persons within the age-protected classification. In January 1999, almost half of White's total work force (30 out of 64 employees) were aged 40 or above. Nine of those workers were older than Wexler. One White's store manager had been hired at age 59. Another employee, hired at age 69, had declined Schiffman's offer to manage one of White's new retail locations. Still another White's employee continued working until his voluntary retirement at age 79. Eight employee affiants, including five aged 40 or more, swore that they never witnessed any age discrimination against any employee during their employment with White's. No witness, other than Wexler, testified that he or she had experienced any age-related mistreatment by White's; and no witness, including Wexler, testified that he or she had ever observed or otherwise knew of any age-driven discrimination against any fellow White's employee.

those of a judge . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Despite the commands of Rule 56, I believe that the lead opinion misapplies this standard of review. The opinion appears to be based more on its agreement with White's's characterization of the facts rather than Wexler's. Such credibility determinations, however, are not within our province to decide. Further, the lead opinion incorrectly draws every inference in favor of White's as the moving party, and ignores critical inferences that should be drawn in favor of Wexler as the nonmoving party.

## II. THE "BUSINESS JUDGMENT" DEFENSE

In addition to its mistaken application of Rule 56, the lead opinion bases much of its conclusions on its deference to the "business judgment" of White's. Despite the lead opinion's assertions to the contrary, an employer's business judgment is not an absolute defense to unlawful discrimination. *See E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997) ("Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision."). The constant recitation of the lead opinion's newly discovered "business judgment" defense to employment discrimination is nothing less than a shibboleth.

## III. WEXLER'S EVIDENTIARY BURDEN

The lead opinion correctly points out that there are two alternative ways for Wexler to meet his evidentiary burden of proving that he was demoted in violation of the ADEA. First, he may proffer direct evidence to show that the decision of White's to demote him was motivated, at least in part, by Wexler's age. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 246-47 (1989) (detailing the "mixed-motive" analysis in a Title VII gender-discrimination action). Second, he may

———————

**DISSENT**

———————

RONALD LEE GILMAN, Circuit Judge, dissenting. The lead opinion's discussion, affirming the grant of summary judgment to White's Fine Furniture, Inc., is a convincing argument of why a jury might conclude that the furniture store did not violate the Age Discrimination in Employment Act (ADEA). Indeed, the analysis sets forth reasons that would almost certainly be the same ones that I would use to uphold a jury verdict against Wexler. We are not, however, being asked to review a jury verdict against Wexler. Instead, we are reviewing a grant of summary judgment to White's, which requires that all factual disputes and reasonable inferences be decided *in favor of Wexler*, not White's. Because I believe that the lead opinion fails to apply the standard of review that is mandated by the Federal Rules of Civil Procedure and Supreme Court precedent, and because I disagree with the concurring opinion's conclusion that Wexler has failed to produce "more than a scintilla of evidence" in his favor, I respectfully dissent.

## I. STANDARD OF REVIEW

When faced with a motion for summary judgment, a court is asked to decide whether genuine issues of material fact exist that would allow a rational factfinder to favor either party. *See* Fed. R. Civ. P. 56. In doing so, we may not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). So long as reasonable minds could disagree as to the correctness of these disputed facts or the inferences to be drawn therefrom, summary judgment must be denied, even if we think that one conclusion is probably the correct one. *See id.* at 250-51. This is because it is not our role to impose our own conclusions on the evidence, unless a single conclusion is the only rational result. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

6.   Gordon Schiffman's repeated references to John Neilson's youth when announcing Mr. Wexler's demotion.

Appellant's opening brief, page 52; Appellant's reply brief, pages 6-7 (ellipse in original).

Even if those six bits of evidence are construed most favorably for Wexler, they do not collectively support any rational inference of age-related bias, especially in the full context of the entire record evidence. The proffered remarks by Schiffman and Lively[9] simply did not evince prejudice, bigotry, or ill will towards the elderly, nor did they betray any adverse judgment(s) concerning Wexler's suitability for his managerial assignment which may have germinated from

———————

[9] The undisputed evidence reflected that Schiffman unilaterally decided to remove Wexler from intermediate management and restore him to his former sales position. Accordingly, any statement by Lively has questionable relevance to this case. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759-60 (6th Cir. 2000) (collecting Sixth Circuit decisions which mandated that only pertinent comments proximately made by company decision-makers may constitute evidence of discriminatory animus by the defendant).

However, even assuming *arguendo* that Lively had participated in the faulted employment decision, the cited statements attributed to him disclosed no age-related animus. One of them (no. 4 above) did not reference age. The other (no. 3) apparently referred to an unknown number of isolated innocuous remarks, patently made in jest, including one uttered during a conversation of unspecified date among Lively, Wexler, and a manufacturer's representative, which had no relationship to the demotion decision. "[M]erely vague, ambiguous, or isolated remarks" by a company agent which were not related to the decision-making process and are not proved to have been made proximate to the assailed adverse employment action cannot constitute sufficient direct evidence of age-inspired employment discrimination to create a jury question. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330-31 (6th Cir. 1994); *see also Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993); *Gagné v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989) (mandating that a solitary ambiguous statement was "too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.") (citations omitted).

negative stereotypical assumptions against persons of advancing years.

To the contrary, Schiffman's statements revealed nothing more than a desire to furnish Wexler with a graceful exit supported by a dignified official predicate explanation for his status downgrade, namely that, as a man approaching age 60, he no longer possessed the requisite energy or drive demanded of a store manager. Indeed, Wexler characterized Schiffman's announcement to the employees regarding his job reassignment as "gracious." Furthermore, that announcement could not be reasonably construed to reveal any judgment by Schiffman that Neilson (Wexler's replacement) possessed superior assets or qualifications *because* of his comparative callowness; rather, Schiffman unambiguously expressed the opinion that Neilson was qualified for the management position *despite* his youth, which he believed should not be deemed a liability.[10]

The mere recognition, by an employer, of the universally known truth that *certain individuals* (as opposed to *every* individual in the protected age-defined category) may experience declining personal capabilities as they approach the traditional age of retirement, is not illegal; nor does an employer's expression of belief that a youthful employment candidate is qualified for a particular job irrespective of his years constitute proof of bias against the elderly. Nothing in

---

[10]The pertinent segment of Schiffman's address to his employees bears reiteration:

> We thought that he was just absolutely a terrific kid. He's about David's age, been in the furniture business about as long as David. He's about as intense as David is. He's a fine guy. His name is John Nielson [sic].

> I think you will like him very much. He is a fine, proper young man. *Don't be misled by his youth anymore than being misled by David Lively's youth.*

(Emphasis added).

chooses not to climb Mt. Everest, or fails in the attempt, does not render the mountain "unclimbable."

In this case, Wexler failed to present more than a scintilla of evidence to rebut White's proffered reason. We need not inquire into the merits of that defense, or the quantum of evidence presented.

Accordingly, I concur in the Judgment affirming the District Court.

The lead opinion frequently uses terms such as "overwhelming uncontroverted evidence," and relies upon *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000), for the proposition that the plaintiff is required to "disprove" the employer's proffered reason for demotion Supra, pp. 20-21. I am concerned that the use of *Reeves* in this context invites misreading of that opinion, and of the burdens shouldered by parties in a summary judgment proceeding. At issue in *Reeves* was whether the defendant was entitled to judgment as a matter of law after a jury found in favor of the plaintiff in an ADEA action. After reviewing the significant quantum of evidence produced by the plaintiff at trial, the Court held that the defendant was not entitled to judgment. Although the analysis required to decide a Rule 50 motion mirrors that used in a Rule 56 motion, the real world difference in the amount of evidence available to the court in the two procedural settings requires that we clarify the inquiry in which we are engaging.

The question presented on summary judgment is merely whether Wexler produced evidence to rebut White's articulated non-discriminatory reason for demotion. A plaintiff does not need to prove anything on summary judgment. He need merely demonstrate that a material question of fact exists for trial. Fed. R. Civ. P. 56(c); see *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Borrowing language from *Reeves* blurs the distinction between the burden of production imposed on the plaintiff in this case, and the ultimate burden of persuasion at issue in *Reeves*.

Further, in its conclusion, the lead opinion characterizes White's legitimate non-discriminatory reason as "evidenced beyond refutation." Supra, p. 22. This statement implicitly calls for a weighing of evidence inappropriate to a Rule 56 proceeding. The question is not whether or not the evidence presented by the defendant could be refuted, but rather whether or not the plaintiff has produced more than a scintilla of evidence tending to refute it. The fact that one individual

Schiffman's statements suggested, directly or indirectly, that he demoted Wexler because of his age in the abstract, *as opposed to because of his declining actual performance. See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 88 (2000) ("the employer cannot rely on age as a proxy for the employee's remaining characteristics, such as productivity, but must instead focus on those factors directly.") (brackets omitted) (*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). To the contrary, the record evidence was uncontroverted that, during the final seven months of Wexler's managerial administration, the Morse Road outlet's total revenues declined 30.25%, and Wexler's personal sales decreased 48%, vis a vis the congruent period during the preceding twelve-month interval. Furthermore, Wexler conceded his understanding that the company would deem him to be personally responsible for his store's transaction figures.

Federal law does not immunize elderly workers from *all* forms of unfair employment treatment *per se*; rather, it shields them only from unfair treatment *incited by age-related prejudice*.[11] The defendant's business judgment that the

---

[11] *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (positing that federal employment discrimination laws have created no "general civility code for the American workplace," but instead proscribe only discrimination for statutorily specified reasons); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or fail to promote for impermissible, discriminatory reasons."); *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988) ("The ultimate question to be resolved is whether the employer treated some people less favorably than others because of their race [or other legally protected characteristic], not whether the employer treated an employee less favorably than someone's general standard of equitable treatment.") (brackets added; citation omitted); *Wrenn v. Gould*, 808 F.2d 493, 502-03 (6th Cir. 1987) (commenting that merely questioning the defendant's business judgment does not comprise evidence that the defendant acted for a discriminatory reason).

Accordingly, the evidence, touted by the plaintiff, that Alvie Crank,

Morse Road location's long-term persistent unsatisfactory performance warranted the replacement of its incumbent manager was not subject to judicial or juror reassessment. Whether that decision was fundamentally rational or fair is not relevant to this case; nor did the alleged comparative deficiencies in the performance of the younger managers who succeeded Wexler retroactively transmute the employer's earlier unbiased business judgment into ageist discrimination. Likewise, the plaintiff's speculation that Schiffman might have treated him more generously if he (the plaintiff) had been younger was unfounded in any admissible proof, and hence no genuine and material, and thus triable, jury question existed on that fabricated sham issue.

An employee's demotion instigated by the employer's subjective business judgment, supported by objective evidence, that the employee's *actual performance* was substandard, constitutes an insurmountable affirmative defense to a "direct evidence" charge of age-inspired intentionally disparate treatment, irrespective of whether the

a man in his mid-thirties who replaced Neilson in approximately November or December 1997 as the Morse Road store manager, had, like Wexler and Neilson, also presided over continuously disappointing sales tallies, but nonetheless remained the store manager at the time of Schiffman's December 3, 1998 deposition, was entirely non-probative of the question of Schiffman's motivations for demoting Wexler in June 1997, for at least three reasons: (1) Crank did not replace Wexler, and therefore his circumstances were too remote in time to provide a valid comparable; (2) if White's had treated Crank more favorably than Wexler, it had also treated him more favorably than Neilson, a man of approximately equivalent age as Crank, which dispels any inference of age-inspired disparate treatment; and (3) White's decision to indulge more tolerance towards Crank's underachievement than it had shown the prior two managers (Wexler and Neilson) was a business judgment made in the light of experience gained consequent to an extended period of depressed sales under the two predecessor managers, which benefit of experience White's did not have at the time that it made its initial business judgment that Wexler's performance was unacceptable. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992) (explaining that evidence that a non-protected "comparable" employee was accorded comparatively superior treatment is probative only if the alleged "comparable" was similarly situated to the plaintiff in all material respects).

————————

## CONCURRENCE

————————

ALICE M. BATCHELDER, Circuit Judge, concurring in the judgment. I agree with Judge Krupansky that the opinion of the District Court should be affirmed. I reach this result, however, by a somewhat different avenue.

First, I disagree that any *Price-Waterhouse* analysis is warranted, given Wexler's failure to produce any direct evidence of age discrimination. The isolated remarks made by Schiffman and Lively, simply do not indicate any age based animus on the part of White's.

This case is more appropriately analyzed according to the framework constructed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make a prima facie case under *McDonnell Douglas*, the plaintiff must demonstrate that 1) he is a member of a protected class, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class. *McDonnell Douglas*, 411 U.S. at 802. A defendant may rebut the prima facie case by articulating that a legitimate, non-discriminatory reason existed for the adverse employment action. White's responded that it demoted Wexler because of his poor performance as manager, particularly noting the sharp drop-off in sales.

White's makes a compelling argument that Wexler failed to make a prima facie case because he was not "qualified" to hold the position of manager, and that this lack of qualification is evidenced by his inability to meet the employer's "reasonable expectations" regarding sales. The more compelling argument, however, is that even assuming that Wexler is qualified, he has failed to present evidence to rebut the employer's legitimate non-discriminatory reason for his demotion.

as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).  Accordingly, summary judgment for the defendant is **AFFIRMED**.

employer may have believed that the perceived inadequacy of the plaintiff's actual job performance may have been influenced, in whole or in part, by age-related disabilities. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991) (positing that an employee is not qualified for his job if he "was not performing to his employer's satisfaction.").[12]  Congress did not intend to protect the job of an employee whose productivity or performance is unsatisfactory *to the employer*.[13]

---

[12]This court has also propounded:

> In order to show that he was qualified, [the plaintiff] must prove that he was performing his job "at a level which met his employer's legitimate expectations."  Moreover, "if [the plaintiff] was not doing what his employer wanted him to do, he was not doing his job. . . .  [The plaintiff] does not raise a material issue of fact on the question of his work merely by challenging the judgment of his supervisors."

*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (ellipse in original; citations omitted; brackets added).

[13]For that reason, testimony by the plaintiff and his former subordinates, which gainsaid the soundness of Schiffman's *business judgment* or questioned the defendant's *motivations*, was irrelevant, as the opinions and judgments of the plaintiff and his former co-workers cannot create a triable issue of fact regarding whether the employer was justified in concluding that its employee's performance was unsatisfactory. *See, e.g., Johnson v. United States Dept. of Health and Human Services*, 30 F.3d 45, 47 (6th Cir. 1994); *O'Shea v. Detroit News*, 887 F.2d 683, 687-88 (6th Cir. 1989); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).

Wexler has argued, unconvincingly, that the affidavits of his former subordinates are probative of the *factual* question whether he actually committed the charged specific acts of unsatisfactory managerial performance, such as poor recordkeeping, failure to mail "thank-you" cards to buyers, inadequate attention to salesperson training and counseling, and failure to maintain the store premises.  However, no genuine, material jury question exists concerning those issues, because, even if Schiffman's specific charges of incompetent performance against Wexler were not borne out by record evidence, the crucial fact is that the evidence is uncontested that Wexler's store suffered a catastrophic enduring retraction in sales traffic during his final seven months as its

Moreover, the conclusion that the four averred remarks by Schiffman, and two by Lively, were facially insufficient to directly prove age-motivated employment discrimination, is powerfully reinforced by the incontrovertible counter-inferences which any rational trier of fact would be compelled to make on the total proof *sub judice*, especially given two uncontested material facts: (1) Wexler was 55 years old at the time of his initial hiring as a White's sales representative, and was 57 years old when elevated to management less than one and one-half years later; and (2) Schiffman, who was almost ten years older than Wexler, made all decisions pertinent to Wexler's employment, including his initial hiring, his promotion to management, and his demotion to a sales representative slot following his unimpressive two-year-and-four-month stint as a store manager.

"[W]here the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). "It is simply incredible that the company officials who hired an employee at age fifty-one had suddenly developed an aversion to older people two years later." *Id.* (ellipse and brackets omitted) (*quoting Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 175 (8th Cir. 1992)). *See also Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing").[14]    That already

___

manager.    That fact independently supplied a sufficient business justification for purging Wexler from the ranks of management.

[14] Wexler's argument that the pro-defendant inference triggered when the same person had hired, and subsequently fired or demoted, an over-40 plaintiff, should *always* pose a jury question, because it merely supports an evidentiary inference which the fact-finder allegedly may freely elect to accept or reject, as opposed to a conclusive evidentiary presumption, was ill conceived.  As the Fourth Circuit has correctly concluded, in most

action, which triggered the plaintiff's burden to disprove that reason.

In the action *instanter*, the plaintiff could not prove that White's articulated reason for demoting him was pretextual, because he could not prove that White's reason (1) had no basis in fact [as demonstrated by the cascading escalation in the declining sales at the Morse Road store], (2) did not actually motivate the defendant's challenged conduct [as no evidence contradicted Schiffman's unimpeached testimony that he demoted Wexler primarily for that reason], or (3) was insufficient to warrant the challenged conduct [as an extended major downturn in store profitability is facially a legitimate business reason to relieve the store's manager of his duties].[17] *See Dews*, 231 F.3d at 1021. Whether that business judgment was sound, in hindsight or otherwise, is irrelevant. *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 898 (6th Cir. 1997) ("The soundness of the employer's business judgment . . . may not be questioned as a means of showing pretext.") (citation omitted).

At bottom, both the uncontested and disputed evidence, together construed most favorably for the plaintiff, can lead to but one sustainable conclusion – that an unbiased, objective, rational factfinder, knowledgeable in the applicable law, and uninfluenced by sympathy, passion, or personal interest, could not, in the absence of impermissible speculation or conjecture, conclude that White's had intentionally treated Wexler disparately because of animus against the elderly.  This case is one in which "the evidence . . . is so one-sided that one party [the defendant] must prevail

___

[17] Moreover, even if the plaintiff had proved that each of the defendant's proffered justifications, *including* the store's declining sales, were mere pretexts (which he has failed to do), he has not offered any evidence which proves that White's *actual motivation* was ageist bigotry. *Reeves*, 120 S. Ct. at 2108.  As developed herein, on the overall record construed most favorably for the plaintiff, a sound factfinder simply could not conclude that the defendant targeted the plaintiff for adverse treatment because of his age, even if it were to reject the reasons given by White's for its action in controversy.

intentionally discriminated against him.[16] *Reeves*, 120 S. Ct. at 2108-09.

Wexler has proved three elements of his circumstantial case – he was a member of the protected class (age 59), he was subjected to an adverse employment action (demotion from management), and he was replaced by a person who was significantly younger than him and not a member of the protected class (Neilson, a man in his early 30s).

However, the plaintiff has not proved the remaining *prima facie* element, namely that he was *qualified* for the managerial post from which he was eliminated. Because, as has been fully developed above, a rational jury could not conclude that Wexler had satisfied his employer's legitimate performance expectations as a store manager, the third necessary element of his *prima facie* circumstantial case is absent. That fatal lapse in the plaintiff's circumstantial proof compels summary judgment for the defendant.

In the alternative, even assuming *arguendo* that a jury question existed regarding Wexler's qualifications to perform in a store management position, the instant record evidenced beyond refutation that Schiffman's election to demote Wexler constituted an exercise of unreviewable business judgment, as has also been fully evolved *supra*. Because the evidence at bar is sufficient to erect the "business judgment" defense to the plaintiff's direct evidence case as a matter of law, *a fortiori*, in the circumstantial evidence case, that evidence is sufficient to constitute a legitimate nondiscriminatory reason proffered by the defendant to explain its adverse employment

---

[16] "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2108 (2000) (quotations, brackets, and ellipses omitted; italics in original).

potent pro-defendant inference is magnified when, as in the case at bench, the material decision-maker was himself older than the plaintiff.

In summary, the plaintiff has failed to prove, by direct evidence, that White's intentionally discriminated against him because of his age. The evidence reflected that Schiffman, the pertinent decision-maker, elected to re-assign the plaintiff because of his store's unacceptably dismal long-term sales record. No evidence of ageist bias by Schiffman against Wexler, or anyone else, has been offered. The absence of direct material proof in support of Wexler's charge of disparate treatment is compounded by the compelling inference of a *non-discriminatory* motive for Schiffman's action, given his own age and the relatively short interval separating his elevation of the over-forty plaintiff to the manager's desk from his restoration of the plaintiff to the sales floor. Finally, even if the tendered direct evidence could be construed by a rational fact-finder to support an inference

---

circumstances, that inference is "compelling" and should be applied on summary judgment:

> While we can imagine egregious facts from which a discharge in this context [where the plaintiff was hired after age 40 and was subsequently discharged by the same person who had hired him] could still be proven to have been discriminatory, *it is likely that the compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage.*
>
> . . . .
>
> The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span . . . creates a strong inference that the employer's stated reason for acting against the employee is not pretextual.

*Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (emphasis added). Those considerations demand that, on the evidentiary record before this reviewing court, the inference that Schiffman did not demote Wexler for age-discriminatory reasons, but instead because of the Morse Road store's low sales performance, is compelled as a matter of law.

of age-driven disparate treatment (which it does not), the defendant's proof that Schiffman exercised legitimate business judgment by replacing Wexler with a new manager because of the Morse Road store's persistent under-performance and profitability decline independently justified the subject adverse employment action, thereby dissipating any purported discriminatory taint. On the subject record, the "business judgment" affirmative defense is unassailable.

Precisely the same failures of the plaintiff's material proof, coupled with the same overwhelming uncontroverted evidence favorable to the defendant, are fatal to the plaintiff's *circumstantial* case. To prove a *prima facie* case of age discrimination in employment founded upon circumstantial evidence, the plaintiff must satisfy the standards first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) – he must evince:

> 1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class.[15]

*Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir. 1997) (citations omitted). *See also Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989).

If the plaintiff proves those four circumstantial elements by a preponderance of evidence, the burden of *production* (but not the burden of proof, *see* note 7 above) then shifts to the defendant to submit "a legitimate, nondiscriminatory reason" for taking the assailed adverse employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion; it

---

[15]The Supreme Court has modified the fourth element to encompass a replacement worker who was also a member the protected categorization, yet significantly younger than the plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996).

'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2106 (2000) (*quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). Once the defendant "has met this burden by offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of" a legitimate, nondiscriminatory reason, such as, for example, his "failure to maintain adequate attendance records," the plaintiff-friendly presumptions of the *McDonnell Douglas* circumstantial evidence paradigm disappear. *Reeves*, 120 S. Ct. at 2106 (citations omitted).

At that point, "the sole remaining issue [is] discrimination *vel non*." *Id*. (citation omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253 (citations omitted). To meet his or her ultimate burden of proof, the plaintiff must persuade the fact-finder, via direct, circumstantial, or statistical evidence, that the defendant's tendered legitimate, nondiscriminatory rationale for subjecting the plaintiff to an adverse employment action was a mere pretext masking an actual discriminatory intent. *Id*. at 255-56. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted). However, although proof that the employer's offered reason was unworthy of credence may be highly probative circumstantial evidence of an actual discriminatory motive, it is not necessarily *sufficient* to prove actual discrimination, as the plaintiff's ultimate burden is to prove that the defendant