**Sharman SIMON and Cynthia Dellick, Plaintiffs–Appellants, Cross–Appellees,**

**v.**

**CITY OF YOUNGSTOWN, Defendant–Appellee, Cross–Appellant.**

Nos. 93–4191, 93–4192.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 27, 1995.

Decided Dec. 28, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 27, 1996.*

* Judge Conti would grant rehearing for the reasons stated in his dissent.

Mary Jane Stephens (briefed), Youngstown, OH, for Plaintiffs–Appellants Cross–Appellees.

Cheryl L. Waite (briefed), Edwin Romero (briefed), Youngstown, OH, for Defendant–Appellee Cross–Appellant.

Before: CONTIE, RYAN, and SILER, Circuit Judges.

SILER, Circuit Judge, delivered the opinion of the court, in which RYAN, Circuit Judge, joined. CONTIE, Circuit Judge (pp. 72–74), delivered a separate opinion concurring in part and dissenting in part.

SILER, Circuit Judge.

Plaintiffs, Sharman Simon and Cynthia Dellick, and the defendant, City of Youngstown, appeal the district court's judgment in favor of plaintiffs on the issue of discriminatory practices in assignment to desk duty and in favor of the City on the issues of failure to promote and failure to appoint to certain assignments, in this civil rights action alleging discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f), and 42 U.S.C. § 1983. For the reasons stated herein, we affirm in part and reverse in part.

I.

In 1989, the plaintiffs herein, Simon and Dellick, white female police officers with the City of Youngstown Police Department, filed this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. Plaintiffs con-

tended that a stipulated settlement agreement pursuant to a 1986 Consent Decree in *Williams v. Vukovich,* No. C76–6Y (N.D.Ohio) ("the Williams case"), had resulted in the promotion of unqualified minority police officers to the rank of detective-sergeant, had denied plaintiffs promotion to this rank, and had discriminated against them on the basis of sex because they were qualified for these promotions.[1] Additionally, plaintiffs alleged the City had failed to promote female police officers to certain assignments on the basis of sex and the City had disproportionately assigned plaintiffs to desk duty on the basis of sex. After presentation of the evidence before the magistrate judge sitting as a special master, the district court found: 1) plaintiffs had failed to prove their claim of sex discrimination in the City's failure to promote them; 2) plaintiffs had failed to make a prima facie showing of discrimination against them because of their sex in the City's assignment of officers to various jobs within the department, because the plaintiffs had not requested assignment to certain positions; and 3) plaintiffs had proved their claim of sex discrimination in the City's disproportionate assignment of the female officers to desk duties. The district court then awarded compensatory damages to the plaintiffs for the disproportionate desk duty assignments.

## II.

Plaintiffs contend that, but for the Consent Decree, they would have been promoted to detective-sergeant in 1989 and thus, they were victims of sex discrimination. The district court's findings are reviewed for clear error. *Sones–Morgan v. The Hertz Corp.,* 725 F.2d 1070, 1071 (6th Cir.1984). A brief history of the 1986 Consent Decree which plaintiffs allege violate their Title VII and constitutional rights is discussed below.

In 1976, black police officers from the City of Youngstown Police Department as well as three black applicants to the police department filed a class action suit against the City and others alleging racially discriminatory practices in hiring and promoting black applicants and employees of the Youngstown Police Department contrary to the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983, 1985 and 1986. This suit was subsequently settled by entry of a gender neutral consent decree, the purpose of which was to obtain a racial balance in the City's police department. Black and other minority women were to be placed on the minority eligibility list for civil service promotional purposes, and Caucasian women were to be placed on the majority eligibility list.

In 1989, seventeen vacancies to the position of detective-sergeant became open. Based upon the examination results of the promotional test, the City promoted the top four white police officers from the majority list and the top four black officers from the minority list, all of whom had received a score of 70% or better on the exam. There were only four minority candidates who had made 70% or above, which had always been the "passing" score. Seven vacancies for the rank of detective-sergeant remained. After negotiations, a court-approved settlement was reached as to how to fulfill the terms of the Consent Decree which required that six minority policemen be promoted. Pursuant to the court-approved settlement, racial minority officers lower on the eligibility list than the two plaintiffs were promoted.

In order to succeed in a Title VII discrimination action, "a plaintiff is required to demonstrate that the adverse employment decision would not have been made 'but for' her sex." *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988). Further, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory explanation for the plaintiff's rejection. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

The district court found the plaintiffs had failed to make a prima facie showing of sex

---

**1.** This is a companion case to *Rafferty v. City of Youngstown,* 54 F.3d 278 (6th Cir.1995), which relates some of the facts in more detail.

discrimination. Specifically, it found in 1989 seventeen vacancies for the position of detective-sergeant became available. Simon and Dellick were ranked thirteen and seventeen respectively on a list of officers eligible for promotion. Pursuant to the consent decree, racial minority officers lower on the eligibility list than the plaintiffs were promoted. Of those promoted who were lower on the list, two were women. Also, there were white males who had scored higher on the exam than the plaintiffs who were also passed over for promotions due to the Consent Decree. Thus, the City did not discriminate on the basis of sex, as it promoted females.

■ "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 565, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985). A review of the record below in its entirety reveals that the district court's findings were not clearly erroneous. Although "the prima facie burden is not a heavy one," *Mills v. Ford Motor Co.,* 800 F.2d 635, 639 (6th Cir.1986), these plaintiffs failed to prove that the adverse action would not have been taken but for their sex, as identical adverse employment action was taken against male officers. *Gutzwiller,* 860 F.2d at 1325.

### III.

■ Plaintiffs next contend that the City failed to appoint female police officers to certain assignments on the basis of sex. The district court dismissed this claim, finding the plaintiffs had failed to make a prima facie showing of sex discrimination. This finding is reviewed for clear error. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511–12.

■ "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of … discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Then, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason

for the employee's rejection." *Id.* However, "[t]he only burden that shifts at this stage of the proceedings is the burden of going forward with admissible evidence of a legitimate, nondiscriminatory reason for not promoting the plaintiffs." *Sones–Morgan,* 725 F.2d at 1072. " '[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Id.* (*quoting Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

Here, the district court found the plaintiffs failed to establish a prima facie case, as there was no evidence these plaintiffs had ever requested assignment to any of the subject positions. Thus, they could not have been discriminated against with respect to such assignments. A review of the record in its entirety does not leave this court with "the definite and firm conviction that a mistake has been committed," *Anderson* at 573, 105 S.Ct. at 1511, as there is no evidence that these plaintiffs had ever requested assignment to any of the subject positions. Consequently, they could not have been discriminated against regarding those positions. The district court's finding was not clearly erroneous.

■ Even assuming arguendo that the plaintiffs did make a prima facie case of discrimination, this claim should be dismissed nonetheless as the plaintiffs failed to show the City's proffered nondiscriminatory reasons for its action—that insufficient female officers were on the force for the department to be able to assign female officers to all positions—was a pretext.

### IV.

■ The City, in its cross appeal, contends that the district court's finding that the plaintiffs had proved discrimination in desk duty assignments was erroneous. This finding is also reviewed for clear error. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511–12.

This finding was clearly erroneous, as a review of the evidence reveals that the plaintiffs failed to show that the nondiscrimi-

natory reasons offered by the City for its assignments were pretextual. The efficient, accurate completion of desk work is essential to the operation of the department as a whole. Consequently, an individual unqualified to perform desk work could not be so assigned, while those individuals qualified to perform desk work would be so assigned a large part of the time. In fact, certain male officers were permanently assigned to desk work.[2]

In support of their contention, plaintiffs offered into evidence their statistics on "predictable rotational average." These statistics assume that the Youngstown Police Department rotates all officers (or it should rotate all officers) on assignments equally, regardless of their individual qualifications for these assignments. However, these statistics ignored, among other things, qualifications. Consequently, these statistics were irrelevant and insufficient to rebut the City's business necessity defense.

The evidence offered by the plaintiffs was insufficient to rebut the City's evidence that it assigned solely on the basis of business necessity. Thus, the district court's finding of discrimination here is reversed. Consequently, the award of damages is set aside.

Based upon the foregoing, the district court's decision in favor of the City on plaintiffs' claims that (1) their failure to be promoted was the result of sex discrimination and (2) their failure to be appointed to certain assignments was the result of sex discrimination is AFFIRMED. The district court's judgment for the plaintiffs on discrimination in desk duty assignments is REVERSED.

CONTIE, Circuit Judge. I concur in part and dissent in part.

I concur in Parts I and II of the majority opinion. However, I respectfully dissent from the majority's conclusion in Part III that the district court should be reversed.

I disagree with the majority's conclusion that the evidence offered by plaintiffs was insufficient to rebut the City's claim that it assigned police officers to desk duty solely on the basis of business necessity. The district court did not base its conclusion that plaintiffs' evidence was sufficient to rebut this claim on the statistics that the majority criticizes and finds irrelevant, but on "a thorough review of the record as a whole." Joint Appendix at 153.

I agree with the district court that the record provides evidence that plaintiffs, the only two women on their "turn" or shift at the Youngstown Police Dept., were disproportionately assigned to desk duty, and the City offered no legitimate nondiscriminatory reason for this disproportionate assignment. The testimony of Eugene Sabatino, Captain of the Youngstown Police Department, indicated that plaintiffs were treated differently than similarly situated qualified male officers on the basis of sex. Sabatino stated that he was responsible for making assignments to desk duty for his "turn" or shift. He stated that the qualifications for desk duty were ability to type, astuteness, and congeniality. He stated that the officers who had these qualifications were six men (Officers Holzschuh, Casanta, Marciano, LoSasso, Malone, and Centric) and two women—the plaintiffs herein.

Sabatino stated that desk assignment for police officers was not a favorable assignment, but some officers volunteered to work the desk in exchange for receiving better days off (Saturday and Sunday). Two male officers on his turn, Centric and Malone, were two men who chose to volunteer for desk duty in exchange for better days off.[1] He testified that plaintiffs, in contrast, were not offered better days off when they were given desk assignments because they did not volunteer for desk duty. He also stated that a lot of male officers claimed they could not type, but he believed it might have been a

---

2. The dissent in footnote 1 asserts that the record does not support the statement that males were permanently assigned to desk duty. However, the district court found in its opinion: "[S]ome male officers were assigned exclusively to desk duty."

1. The majority's statement that males were permanently assigned to desk duty is not supported by the record. Officers were only assigned to desk duty if civilian personnel were not available to work on a substitution basis.

ploy to avoid desk duty, and he believed male officers had been prepped not to be able to type so they would not have to do desk duty. However, Sabatino stated that if he found out a male officer could type, he would assign him to the desk.

Sabatino then reviewed the work schedules for the year 1985 and stated that no male officer, who was qualified for desk duty, was assigned as frequently to desk duty as plaintiff Simon[2] except for male officers who volunteered or were assigned to desk duty for disciplinary reasons. After reviewing the schedules of plaintiff Simon's assignments to desk duty in 1986, Sabatino stated that no male officer, who qualified for desk duty, was assigned to this position as frequently as she was except for Officer Centric, who had volunteered for desk duty and was receiving better days off in exchange for his assignment to desk duty. Officer Simon did not receive better days off. Sabatino also conceded that often a person with less seniority was given most of the desk assignments, but in 1986, in spite of the fact that Officer Simon had the most seniority, she was assigned to the desk more often than any qualified male officer except for Officer Centric, who volunteered.

I believe Sabatino's testimony indicates that women who could type were treated differently than similarly situated qualified male officers, and that plaintiffs were assigned to desk duty disproportionately, which established a *prima facie* case of sex discrimination. *Kent County Sheriff's Ass'n v. County of Kent,* 826 F.2d 1485, 1492 (6th Cir.1987) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973)); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800–803 (6th Cir.1994). *See also E.E.O.C. v. Romeo Community Schools,* 976 F.2d 985 (6th Cir.1992). The City offered no nondiscriminatory reason for assigning women to desk duty more frequently than similarly situated qualified male officers because there was no business necessity to assign qualified women to desk duty instead of qualified males, who could type. Therefore, I believe the district court should be affirmed on this issue.

However, I believe the district court erred in awarding damages for economic loss that were too speculative. The district court awarded damages for economic loss due to plaintiffs' loss of AT time because of disproportionate assignment to desk duty. In this regard, he stated the following:

> Damages or other remedies are difficult to quantify for this injury; the primary tangible injury noted by the plaintiffs was their relative inability to gain accumulated time ("AT") while working at the desk. Testimony was presented that the primary method for gaining AT was making an arrest while working on the street on one of the evening or night turns, and then going to court on that arrest in the daytime. Because plaintiffs lost the opportunity to gain AT rather than losing a specific amount of AT, it is difficult to pinpoint the amount of the plaintiffs' loss.

> In their post-hearing brief, plaintiffs offer this court a formula for awarding damages in this context; they request $1,000 damages per plaintiff per year that the officer worked the desk more than she would have done if desk duty had been assigned on a strict rotational basis to all officers on the turn. This seems to be a reasonable formula; it offers the plaintiff a nominal amount for each year they were actually injured. This formula, therefore, should be followed. Therefore, because plaintiff Simon worked the desk more often than average from 1979 through 1982, 1984 through 1987, and 1991, a total of nine years, she should be awarded $9,000 compensatory damages for lost AT opportunity. Plaintiff Dellick worked the desk more than average in 1982, and from 1984 through 1987, a total of five years, and she should therefore receive $5,000 compensatory damages for lost AT opportunity.

The district court found that plaintiffs could have accumulated additional pay during this lost AT time, and the calculation of $1,000 per year was not clearly erroneous, but was a "fair reflection of damages incurred by plaintiffs because of defendant's discriminatory activities." Therefore, the district court ap-

---

**2.** Officer Dellick was not under Sabatino's command until 1988.

proved the recommendation of the magistrate in this regard.

Defendant argues that the district court committed clear error by awarding these damages to plaintiffs because the amount of damages was speculative. For example, there was no evidence and no testimony about the number of arrests made or the AT time earned by plaintiffs while they were not on desk duty. There was no evidence presented about the average AT time earned by other officers who earned AT time by making arrests at night and going to court during the day, but were not assigned to the desk disproportionately. Defendant argues that the award was merely based on a suggested amount introduced for the first time by plaintiffs in their post-trial brief filed on November 2, 1992, and was merely plucked from the air.

I agree with defendant's argument. In order to receive damages under Title VII or 42 U.S.C. § 1983, the principles of common law torts are ordinarily used. *Memphis Community School District v. Stachura*, 477 U.S. 299, 305, 106 S.Ct. 2537, 2541–42, 91 L.Ed.2d 249 (1986). Back-pay awards are usually the make-whole remedy used to redress any economic harm suffered. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988). Although courts are granted discretion in their damage awards, damages still must be proved and speculative awards may not be given. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263–64, 66 S.Ct. 574, 579–80, 90 L.Ed. 652 (1946). I believe that in the present case, there is a way to determine approximately how much AT time was lost by being assigned to desk duty, but the district court failed to require that this amount be determined. Instead, the court merely accepted the figure offered by plaintiffs without any knowledge if the amount of AT time earned by officers working the streets and making arrests at night was equal to $1,000 a year. The record indicates that an officer could be compensated at $4 per hour for accumulating AT time. To warrant $1000 per year, plaintiffs would have had to accumulate 250 hours of AT time. There was no evidence to indicate that this number of AT hours could be accumulated during the time when plaintiffs were dispro-

portionately assigned to the desk instead of being out on the street where AT time could be accumulated. I believe the amount of AT time earned by male officers who were also assigned to desk duty can be determined to provide an equitable damage award by comparison. Because plaintiffs failed to provide this calculation, I believe the district court must be reversed on this issue, and the case must be remanded for a calculation of damages that is not based on speculation.

To conclude, I believe the district court's determination that plaintiffs were disproportionately assigned to desk duty on the basis of sex should be affirmed, but this case must be remanded to the district court for a more specific determination of damages.