Clarence SEAY, Jr., Plaintiff,

v.

**TENNESSEE VALLEY AUTHORITY,**
Craven Crowell, Defendants.

No. 1:00–CV–168.

United States District Court,
E.D. Tennessee,
Winchester Division.

March 11, 2004.

See, also, 340 F.Supp.2d 844, 2004 WL 2345626.

John R. Benn, Sheffield, AL, for Plaintiff.

John E. Slater, Senior Litigation Attorney, Tennessee Valley Authority, Knoxville, TN, for Defendants.

### MEMORANDUM AND ORDER

EDGAR, Chief Judge.

The United States Court of Appeals for the Sixth Circuit reversed a grant of summary judgment in favor of defendants Tennessee Valley Authority and Craven Crowell (collectively "TVA") on Counts 67, 75, 125 (with respect to reassignment rights), and 129. The Sixth Circuit remanded these four claims in the plaintiff's amended complaint for further consideration. *Seay v. Tennessee Valley Authority*, 339 F.3d 454 (6th Cir.2003).

There are two motions before this Court. TVA moves for leave to add two documents to its exhibit list. [Court File No. 127]. The motion is **GRANTED.**

TVA makes a renewed motion for summary judgment as to Counts 67 and 125. [Court File No. 119]. After reviewing the record, the Court concludes that TVA's motion is **GRANTED IN PART AND DENIED IN PART** as follows. The summary judgment motion is **GRANTED** with regard to Count 67. For the reasons expressed by TVA in its briefs [Court File Nos. 120, 124], Count 67 of the plaintiff's amended complaint is **DISMISSED WITH PREJUDICE** pursuant to FED. R. CIV. P. 56.

TVA's motion for summary judgment to dismiss Count 125 (reassignment rights) is **DENIED** because there are genuine issues

of material fact in dispute. Seay may proceed to trial on Count 125 (reassignment rights). The only claims that remain before the Court for adjudication at trial are Counts 75, 125 (reassignment rights), and 129 of the amended complaint.

## I. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must view the facts contained in the record and all reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir.2003). To refute such a showing, the nonmoving party must present some significant, probative evidence and specific facts indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Rodgers*, 344 F.3d at 595. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581–82 (6th Cir.1992). The Court's role is limited to determining whether the record contains sufficient evidence from which a rational, objective jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249, 106 S.Ct. 2505; *Rodgers*, 344 F.3d at 595; *National Satellite Sports*, 253 F.3d at 907.

## II. Count 67: Methods Team Specialist (Plant Operations) Position

In Count 67 of his amended complaint, plaintiff Clarence Seay, Jr. ("Seay") asserts a claim of race discrimination in employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, concerning his non-selection for the position of Methods Team Specialist (Plant Operations), pay grade ("PG") 8. This Court initially dismissed Count 67 after concluding that it is time barred and equitable tolling does not apply. The Sixth Circuit reversed, holding that Seay is entitled to equitable tolling of the time limit for filing suit. The Sixth Circuit remanded Count 67 for further consideration of this claim's merits. *Seay*, 339 F.3d at 468–70.

### A. Facts

The Court has reviewed the record in the light most favorable to Seay and makes the following findings of fact. Seay, an African American, was suspended from his Safety Specialist SD–4 position at TVA on July 2, 1997. TVA terminated Seay's employment through a reduction in force ("RIF") on September 26, 1997.

While Seay was suspended in July 1997, TVA's Process Methods organization advertised in Vacant Position Announcement ("VPA") 12205 that it was seeking to hire a Methods Team Specialist (Plant Operations), PG–8. The closing date for candidates to submit their applications was July 11, 1997.

The minimum qualifications for this particular position were listed as Bachelor of Science degree in engineering, or Bachelor of Science degree in another scientific discipline, or equivalent related experience. VPA 12205 further provided that applicants were also required to have: (1) detailed work knowledge of TVA processes, programs, and practices in the area of plant operations; (2) ability to analyze complex technical and management problems and determine the most cost effective solutions; (3) detailed working knowledge of nuclear plant design, construction, and maintenance techniques and practices; (4) minimum of eight years experience performing functions associated with plant operations in the nuclear industry; and (5) working knowledge of upper tier external and internal documents for nuclear power plants. [Plaintiff's Evidentiary Submission, Vol. 4, Tab 4, Deposition of Robert Adney, pp. 14–15].

There is a dispute whether Seay met all of these minimum qualifications. Seay had a Bachelor of Science degree from college but he may not have had the requisite experience and knowledge concerning the management and operation of a nuclear power plant. For purposes of ruling on TVA's summary judgment motion, the Court assumes *arguendo* that Seay met the minimum qualifications for VPA 12205. Even if Seay met the minimum qualifications for VPA 12205, his claim in Count 67 must be dismissed.

Seay applied for VPA 12205. The TVA procedure for processing the applications bears close scrutiny. TVA Human Resources employee, Debbie Layne, received all the applications for VPA 12205 including Seay's application. On July 14, 1997, Debbie Layne put the applications in a package which was forwarded to Human Resources Consultant Donald Nixon ("Nixon"). Nixon had the package in his possession but, as explained *infra*, Nixon did not review it. The applications package contained a computer-generated selection "spreadsheet" showing basic information about each candidate including their race. The spreadsheet clearly indicated that Seay is African American (black).

The TVA manager ultimately responsible for making the hiring decision with regard to VPA 12205 was TVA Vice–President for Process Methods, Robert Adney ("Adney"). Nixon served in the capacity as a Human Resources consultant to Adney. The Court concentrates its attention on determining whether there is any proof that Adney and Nixon had actual knowledge in July 1997 of Seay's race and that Seay had submitted an application for VPA 12205.

The Court finds that although the information about Seay's race was in the applications package prepared by Debbie Layne, there is no proof that Adney and Nixon reviewed the applications package and spreadsheet. There was no need for Adney and Nixon to review these documents because Adney decided on July 22, 1997, to cancel VPA 12205. Adney communicated his final decision to Nixon to cancel VPA 12205. Adney then asked for Nixon's advice and assistance in finding someone to work as a Methods Teams Specialist but at a significantly lower pay grade (PG–5) with lesser job duties and responsibilities than those advertised in VPA 12205, PG–8.

Based on Nixon's advice and recommendation, Adney decided to select a TVA employee, Albert Salatka ("Salatka") for the position of Methods Team Specialist, PG–5. Salatka was selected by Adney on a "rotational basis for developmental purposes."[1] No one, including Salatka, ever

---

**1.** Seay filed an Equal Employment Opportunity complaint regarding his non-selection.

During administrative review of the EEO

filled the VPA 12205 position at the PG–8 level. Salatka is white (Caucasian). When Nixon recommended Salatka, Nixon knew that Salatka is white but Adney did not know Salatka's race. Seay complains that the selection of Salatka for the rotational assignment was a non-competitive placement, i.e. the position to which Salatka was assigned was not advertised by TVA in a VPA and Seay was not afforded an opportunity to apply for it. Seay also contends that Salatka was pre-selected. Since 1987, Salatka had worked for TVA in the position of Senior Fire Protection Specialist, PG–5, and he had more than eight years experience working in nuclear plant operations. (Adney Deposition, pp. 44, 51–52, 71, 90–91, 109).

Seay strives to make out a Title VII disparate treatment claim by comparing himself to Salatka. Seay asserts that Salatka was selected by Adney even though Seay was substantially better qualified for the position. Seay emphasizes that Salatka did not have the minimum education requirement for VPA 12205, whereas Seay had a Bachelor of Science college degree. Salatka was a high school graduate and did not have a college degree.

The Court finds it is immaterial whether Salatka did or did not meet the minimum qualifications for VPA 12205, PG–8. The Court's decision on Count 67 does not turn on the issue whether Salatka satisfied the minimum requirements and qualifications for VPA 12205, PG–8. Moreover, the disposition of Count 67 does not turn on whether Seay was better qualified for VPA 12205 compared to Salatka. Adney canceled VPA 12205, PG–8, and that particular position was never filled by anyone, including Salatka.

This Court's decision to dismiss Count 67 turns on the key fact that Seay cannot prove a causal connection between Adney's decision and Seay's race. When Adney made his decision in July 1997, Adney had no actual knowledge of Seay's race and Adney did not know that Seay had even applied for VPA 12205. Therefore, Seay cannot prove that Adney's decision was motivated by any intent to discriminate against Seay due to his race.

Seay concedes there is no evidence that Adney reviewed the applications package for VPA 12205 and the spreadsheet showing Seay's race in July 1997. There is a perfectly logical explanation why Adney did not bother to review the applications package for VPA 12205 and the spreadsheet. Before going to the time and trouble of reading the multitude of documents from TVA's Human Resources department, Adney reconsidered and decided on July 22, 1997, to cancel VPA 12205. During the critical period of time from early July through July 22, 1997, Adney had second thoughts about whether it was really necessary and a good idea to fill the permanent position announced in VPA 12205 at the PG–8 level. Adney took into consideration that the Process Methods Organization was a newly created department within TVA. Adney was trying to understand and figure out the role and function of the Process Methods Organization. TVA was then undergoing significant

complaint, TVA's Human Resources Department issued a letter on December 5, 1997, explaining what had occurred. The letter is quoted in pertinent part in the Sixth Circuit's opinion. *Seay,* 339 F.3d at 468. The letter explained that TVA management (Adney) made a decision not to fill the PG–8 position but instead to utilize "the headcount and budget to further develop a current employee in preparation for a site position." The letter goes on to state that Salatka "was rotated into this position at the PG–5 level for the purpose of development. Once this developmental process is complete, Mr. Salatka will no longer occupy the headcount in the Process Methods organization. Management will then make a decision as to whether or not to fill the PG–8 position."

employee layoffs (RIF). Adney did not want to offer a permanent position to someone at the PG–8 level as described in VPA 12205 only to have to lay off that same person the next year due to reorganization or RIF. (Adney Deposition, pp. 50–51).

These are the only reasons why Adney decided to cancel VPA 12205. There is absolutely no proof that Adney's decision on July 22, 1997, to cancel VPA 12205 was motivated by intentional race discrimination against Seay. Adney's decision to cancel VPA 12205 and to select Salatka could not have been motivated by an intent on Adney's part to discriminate against Seay since Adney had no actual knowledge of Seay's race and Adney did not know that Seay had applied for VPA 12205.

Seay concedes he cannot prove that Adney reviewed the applications package for VPA 12205 and the spreadsheet showing Seay's race. In an attempt to get around and surmount the problem of Adney's lack of actual knowledge, Seay contends that Adney's decision is tainted by advice that Adney received from Nixon. Seay endeavors to make out a claim of race discrimination predicated on the theory that Adney relied on Nixon's advice in selecting Salatka. It is alleged that when Nixon recommended Salatka in July 1997, Nixon knew that Seay is African American and Salatka is white. In other words, Seay contends that Adney's decision is the result of race discrimination emanating from Nixon.

Stripped down to its essence, the underlying premise of Seay's theory is that decision-maker Adney's lack of actual knowledge of Seay's race and his application for VPA 12205 does not insulate TVA from liability under Title VII if Seay can prove: (1) Adney's decision was substantially influenced by or based upon information and advice supplied by Nixon; and (2) Nixon had actual knowledge of Seay's race and Nixon's advice to Adney was motivated by

an intent on Nixon's part to engage in race discrimination against Seay. *See, e.g., Cushman–Lagerstrom v. Citizens Ins. Co. of America,* 72 Fed.Appx. 322, 2003 WL 21774017, *9 (6th Cir.2003); *Nemet v. First National Bank of Ohio,* 198 F.3d 246 (Table, text in 1999 WL 1111584, *6–7 (6th Cir.1999)); *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 354–55 (6th Cir. 1998); *Wells v. New Cherokee Corp.,* 58 F.3d 233, 237–38 (6th Cir.1995); *Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1459–60 (7th Cir.1994); *Simpson v. Diversitech General, Inc.,* 945 F.2d 156, 159–60 (6th Cir.1991); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1327 (6th Cir.1988); *Holmes v. FSR/Tennessee Affordable Housing,* 100 F.Supp.2d 804, 807–08 (W.D.Tenn.2000); *Williams v. United Dairy Farmers,* 20 F.Supp.2d 1193, 1198–1201 (S.D.Ohio 1998); *see also Mateu–Anderegg v. School Dist. of Whitefish Bay,* 304 F.3d 618, 626–27 (7th Cir.2002) (Ripple, J., concurring).

The Court finds that Nixon was not meaningfully involved in Adney's decision to cancel VPA 12205. Adney alone made the decision to cancel VPA 12205 without any advice or recommendation from Nixon. However, Nixon was meaningfully involved in Adney's decision to select Salatka. Nixon recommended Salatka.

Seay's theory fails for two reasons. First, Nixon was not meaningfully involved in Adney's decision to cancel VPA 12205. Second, with regard to Adney's decision to select Salatka, there is no probative evidence that in July 1997, Nixon reviewed the applications package for VPA 12205 and the spreadsheet showing Seay's race. A rational, objective jury could not find that Nixon had actual knowledge of Seay's race in July 1997. Therefore, Nixon's advice to Adney to select Salatka could not have been motivated by any intent on Nix-

on's part to discriminate against Seay based on Seay's race.

Prior to July 22, 1997, Adney discussed his thoughts and concerns with Nixon about whether it was a good idea to go ahead and hire someone to fill VPA 12205 at the PG–8 level. Based on his conversations with Adney, Nixon was aware there was a strong probability that Adney would cancel VPA 12205. It was unnecessary for Nixon to waste his time reviewing the applications package for VPA 12205 and the spreadsheet showing Seay's race since it appeared that VPA 12205 was going to be canceled by Adney. In his deposition, Nixon testifies that he does not recall ever reviewing the applications package for VPA 12205 and the spreadsheet because there was no reason for him to do so. [Plaintiff's Evidentiary Submission, Vol. 4, Tab 5, Nixon Deposition, pp. 61, 64, 70–71, 80–81, 85, 87 89, 91, 97]. Seay has no probative evidence to the contrary. In short, Seay cannot prove that Nixon knew about Seay's race in July 1997. Consequently, Seay cannot prove that Nixon's advice to decision-maker Adney to select Salatka was motivated by any intent on the part of Nixon to engage in race discrimination against Seay.

Seay alleges that because Nixon received the applications package containing the spreadsheet from Debbie Layne on or about July 14, 1997, it can be inferred that Nixon opened the package and reviewed the documents. The Court rejects Seay's contention. Seay's allegation that Nixon opened the applications package and that Nixon had actual knowledge about Seay's race from Nixon reviewing the spreadsheet is nothing more than rank speculation and conjecture. Seay cannot defeat TVA's summary judgment motions by making conclusory allegations based on speculation and conjecture. A mere scintilla of evidence or the mere possibility of a factual dispute is not enough to support

Seay's claim and preclude summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *McLean,* 224 F.3d at 800; *Hartsel,* 87 F.3d at 799; *Mitchell,* 964 F.2d at 582. A rational, objective jury could not reasonably infer from the proof that: (1) Nixon reviewed the applications package and spreadsheet in July 1997; and (2) Nixon thereby gained actual knowledge that Seay had applied for VPA 12205 and Seay is African American. That Nixon had the applications package and spreadsheet available to him does not reasonably lead to an inference that Nixon opened the package and read the documents.

In his brief in opposition to TVA's summary judgment motion, Seay argues that Adney has "confirmed" that Nixon looked at the applications package for VPA 12205. [Court File No. 122, pp. 3–4 n. 3]. Seay cites to certain deposition testimony by Adney. [Plaintiff's Evidentiary Submission, Vol. 4, Tab 4, Adney Deposition p. 44]. The Court has carefully read Adney's entire deposition and determined that Seay's contention is without merit. At most, Adney merely testifies that Nixon recommended Salatka for the Methods Team Specialist, PG–5, position after Nixon looked at Salatka's resume and background. Adney's deposition cannot be fairly read to mean that Adney confirms Nixon reviewed the applications package and selection spreadsheet for VPA 12205 before Nixon decided to recommend Salatka. There is nothing in Adney's deposition to support Seay's theory that Nixon in July 1997 reviewed the applications package for VPA 12205 and the spreadsheet, and that Nixon had actual knowledge of Seay's race. On page 75 of his deposition, Adney states he has no knowledge whether Nixon reviewed the contents of the applications package on VPA 12205.

## B. *Analysis*

Disparate treatment occurs when an employer treats some employees less favor-

ably than others because of race. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McConico v. Cincinnati Gas & Electric Co.,* 114 F.3d 1188 (Table, text at 1997 WL 242091, *3 (6th Cir. May 8, 1997)); *Huguley v. General Motors Corp.,* 52 F.3d 1364, 1370 (6th Cir.1995); *Mitchell,* 964 F.2d at 582–83; *Daniels v. Board of Educ. of Ravenna City School,* 805 F.2d 203, 206 (6th Cir. 1986).

Seay bears the initial burden of showing a *prima facie* case of disparate treatment by his employer. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Seay,* 339 F.3d at 463; *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611–12 (6th Cir.2002); *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 342 (6th Cir. 1997); *Talley v. Bravo Pitino, Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995); *Mitchell,* 964 F.2d at 582. To preclude summary judgment, Seay must present some probative evidence showing there is at least a genuine issue of material fact in dispute whether TVA acted with the intent or motive to discriminate against Seay on the basis of his race. Seay must show that his race actually played a role in Adney's decision-making process and it had a determinative influence on Adney's decision which amounts to disparate treatment. *International Bhd. of Teamsters,* 431 U.S. at 335–36, 97 S.Ct. 1843; *McConico,* 1997 WL 242091, at *3; *Huguley,* 52 F.3d at 1370.

Seay may seek to establish a *prima facie* case either by direct evidence or by circumstantial evidence that creates an inference of race discrimination. *Seay,* 339 F.3d at 463; *Weberg v. Franks,* 229 F.3d 514, 522–23 (6th Cir.2000); *Johnson v.* *University of Cincinnati,* 215 F.3d 561, 572 (6th Cir.2000); *Jacklyn v. Schering–Plough Healthcare Products,* 176 F.3d 921, 926 (6th Cir.1999); *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir.1996); *Burns v. City of Columbus, Dep't of Public Safety,* 91 F.3d 836, 842–43 (6th Cir.1996); *Talley,* 61 F.3d at 1246, 1248–49; *Huguley,* 52 F.3d at 1370–71. The direct evidence and circumstantial evidence paths are mutually exclusive. Seay need only show one or the other, but not both. *Johnson,* 215 F.3d at 572; *Kline,* 128 F.3d at 348.

Direct evidence is that evidence, which if believed, requires the conclusion that race discrimination was at least a motivating factor in the employer's actions. *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003); *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir.2002); *Wexler v. White's Fine Furniture, Inc.,* 246 F.3d 856, 862 (6th Cir.2001); *Weberg,* 229 F.3d at 522, 524; *Jacklyn,* 176 F.3d at 926; *Talley,* 61 F.3d at 1248. As a practical matter, rarely will there be direct evidence from the lips of an employer proclaiming racial animus. *Robinson v. Runyon,* 149 F.3d 507, 513 (6th Cir.1998); *Kline,* 128 F.3d at 348.

Seay does not have any direct evidence of intentional race discrimination. There is no direct evidence that Adney ever made any statements indicating that his decision to cancel VPA 12205 and select Salatka for the lesser PG–5 level position was motivated by an intent or desire to discriminate against Seay on account of his race as an African American. There is no direct evidence that Nixon ever made any statements indicating that his recommendation of Salatka was motivated by an intent to discriminate against Seay due to Seay's race.

Seay seeks to make out a *prima facie* claim of disparate treatment based solely on circumstantial proof. The Supreme

Court in *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817, sets forth the analytical framework generally governing Title VII cases where the plaintiff employee lacks direct evidence of an employer's discriminatory intent. *See also Seay,* 339 F.3d at 463; *Hopson,* 306 F.3d at 433; *Farmer,* 295 F.3d at 603; *Burns,* 91 F.3d at 842–43; *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1179 (6th Cir.1996); *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1166 (6th Cir.1996). To establish a *prima facie* case of disparate treatment based on circumstantial evidence, Seay is required to show four essential elements: (1) Seay belongs to a protected class of persons by virtue of his race; (2) Seay was qualified for the job he sought; (3) Seay's application for the job was denied; and (4) a comparable white person similarly situated to Seay was hired for the job or received more favorable treatment than Seay. *Seay,* 339 F.3d at 463; *Hopson,* 306 F.3d at 433; *Clayton,* 281 F.3d at 610; *Perry,* 209 F.3d at 601; *Ensley–Gaines,* 100 F.3d at 1224; *Thurman,* 90 F.3d at 1166; *Harrison v. Metro. Government of Nashville,* 80 F.3d 1107, 1115 (6th Cir.1996); *Talley,* 61 F.3d at 1246; *Mitchell,* 964 F.2d at 582–83. To defeat a properly supported summary judgment motion, Seay must at least show that a genuine issue of material fact exists as to each element of his *prima facie* case. *Burns,* 91 F.3d at 843.

If Seay is able to meet his burden of making out a *prima facie* claim based on circumstantial evidence, it would establish an inference or rebuttable presumption of intentional race discrimination. The burden of producing evidence then shifts to the employer, TVA, to articulate a legitimate, nondiscriminatory reason for the adverse employment action taken against Seay. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089; *Seay,* 339 F.3d at

463; *Johnson,* 319 F.3d at 866; *Hopson,* 306 F.3d at 433; *Ensley–Gaines,* 100 F.3d at 1224; *Burns,* 91 F.3d at 843–44; *Thurman,* 90 F.3d at 1166; *Wixson v. Dowagiac Nursing Home,* 87 F.3d 164, 169 (6th Cir.1996); *Talley,* 61 F.3d at 1246.

If TVA articulates a legitimate, nondiscriminatory reason for its conduct, then the inference of race discrimination raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a new level of specificity. *United States Postal Service v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *E.E.O.C. v. Avery Dennison,* 104 F.3d 858, 861–62 (6th Cir.1997); *Thurman,* 90 F.3d at 1166. The burden shifts back to Seay to produce evidence that TVA's proffered reason is a pretext for race discrimination. *Hicks,* 509 U.S. at 510–11, 113 S.Ct. 2742; *Seay,* 339 F.3d at 463; *Hopson,* 306 F.3d at 433–34; *Kline,* 128 F.3d at 342–43; *Monette,* 90 F.3d at 1179. If TVA presents a legitimate, nondiscriminatory reason for its adverse employment decision, Seay is required to demonstrate that a genuine issue of material fact exists as to whether TVA's proffered reason is a pretext for discrimination in order for Seay to defeat TVA's summary judgment motion. *Seay,* 339 F.3d at 467.

Pretext may be shown either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer's conduct, or indirectly by showing that the employer's proffered reason is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *E.E.O.C. v. Yenkin–Majestic Paint Corp.,* 112 F.3d 831, 834 (6th Cir.1997); *Thurman,* 90 F.3d at 1166; *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1082 (6th Cir.1994). To successfully challenge the credibility of the employer's proffered reason for its conduct, Seay must prove by a preponderance of the evidence either that:

(1) the employer's proffered reason has no basis in fact; or (2) the proffered reason did not actually motivate the adverse employment action; or (3) the proffered reason was insufficient to motivate or warrant the adverse employment action. *Seay,* 339 F.3d at 463; *Johnson,* 319 F.3d at 866; *Hopson,* 306 F.3d at 434; *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 471–72 (6th Cir.2002); *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000); *Yenkin–Majestic Paint,* 112 F.3d at 834; *Burns,* 91 F.3d at 844; *Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995); *Manzer,* 29 F.3d at 1084.

Despite these shifting burdens of production of evidence, Seay at all times bears the ultimate burden of persuasion that his employer's conduct (TVA manager Adney's decision) was the product of intentional race discrimination. *Hicks,* 509 U.S. at 510–12, 113 S.Ct. 2742; *Wixson,* 87 F.3d at 169; *Simon v. City of Youngstown,* 73 F.3d 68, 71 (6th Cir.1995). Seay is required to prove a causal connection between Adney's decision and Seay's race. What Seay must prove is that the action taken by Adney would not have occurred but for Seay's race as an African American. *Simon,* 73 F.3d at 70; *Gutzwiller,* 860 F.2d at 1325.

The Court concludes that Seay has not made out a *prima facie* Title VII claim based on circumstantial evidence. Seay's disparate treatment claim under Count 67 fails and must be dismissed because he cannot prove the essential element of causation. A rational, objective jury could not find in Seay's favor on the issue of causation. When Adney made the decision to cancel VPA 12205 and to rotate Salatka to the job of Methods Team Specialist, PG–5, Adney did not have actual knowledge that Seay had applied for VPA 12205. Adney never reviewed Seay's job application and the selections spreadsheet. Adney did not

know about, and could not have considered Seay's race.

Furthermore, when Adney made the decision to cancel VPA 12205 and to rotate Salatka to the Methods Team Specialist, PG–5, position, Nixon did not have actual knowledge that Seay had applied for VPA 12205. There is no probative evidence that Nixon reviewed Seay's job application and the spreadsheet in July 1997. Nixon did not know about or consider Seay's race when Nixon recommended to Adney that Salatka be selected. Based on these facts, Seay simply cannot prove that Adney's decision was motivated by intentional race discrimination against Seay.

Discrimination under Title VII is concerned with actual knowledge and real intent, not constructive knowledge and assumed intent. When evaluating Seay's charge of race discrimination under Title VII, this Court must focus on the actual knowledge and intentions of the decisionmaker, Adney, and his advisor/consultant, Nixon. *Lubetsky v. Applied Card Systems, Inc.,* 296 F.3d 1301, 1305–06 (11th Cir.2002); *Walker v. Prudential Property and Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir.2002); *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1262 (11th Cir. 2001); *Pressley v. Haeger,* 977 F.2d 295, 297 (7th Cir.1992); *Moreland v. Miami–Dade County,* 255 F.Supp.2d 1304, 1315 (S.D.Fla.2002); *see also Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1317 n. 5 (11th Cir.2003).

In July 1997, Adney and Nixon were completely unaware of Seay's application for VPA 12205. Moreover, Adney and Nixon had no actual knowledge of Seay's race. Consequently, Adney (TVA) could not have discriminated against Seay based on his race. *Lubetsky,* 296 F.3d at 1305–06; *Walker,* 286 F.3d at 1275; *Pressley,* 977 F.2d at 297; *Robinson v. Adams,* 847 F.2d 1315, 1316–17 (9th Cir.1987); *John-*

*son v. Northwest Airlines,* 839 F.Supp. 1253, 1259 (E.D.Mich.1993), *aff'd,* 53 F.3d 331 (Table, text in 1995 WL 242001) (6th Cir.1995); *cf. Prebilich–Holland v. Gaylord Entertainment Co.,* 297 F.3d 438, 443–44 (6th Cir.2002); *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1005–07 (7th Cir. 2001) (plaintiff failed to establish *prima facie* case of pregnancy discrimination under Title VII, 42 U.S.C. § 2000e(k), where plaintiff could not prove that the person who decided to terminate her employment knew the plaintiff was pregnant); *Geraci v. Moody–Tottrup, Int's, Inc.,* 82 F.3d 578, 580–82 (3rd Cir.1996).

This same logic has been applied by federal courts in the context of Title VII retaliation cases. Where a decision-maker accused of retaliation lacked actual knowledge that the plaintiff employee had engaged in Title VII protected activity, then the defendant employer cannot be held liable for retaliation under Title VII. This is because the plaintiff employee is unable to prove an essential element of the *prima facie* case, *i.e.* a causal connection between the plaintiff's Title VII protected activity and the adverse employment action. *Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1156 (11th Cir.2002); *Mulhall v. Ashcroft,* 287 F.3d 543, 551–54 (6th Cir. 2002); *see also Clark County School Dist. v. Breeden,* 532 U.S. 268, 272–73, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

This Court's decision to dismiss Seay's claim under Count 67 is also buttressed by *Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). In *Raytheon,* the Supreme Court considered the question of what is the proper application of disparate impact analysis to a worker's disability discrimination claim brought under the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* An employee in the defendant/appellant corporation's Labor Relations Department, Joanne Bockmiller, rejected Joel Hernandez's ap-

plication for re-employment. The Supreme Court observed that if decision-maker Bockmiller was entirely unaware of the existence of Hernandez's disability, then it cannot be said that her decision to reject the application for re-employment was motivated by the disability. "If Bockmiller were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, ipso facto, have been subject to disparate treatment." *Raytheon,* 540 U.S. at 54 n. 7, 124 S.Ct. at 520 n. 7, 157 L.Ed.2d at 367 n. 7; *accord Burns v. City of Columbus, Dept. of Public Safety,* 91 F.3d 836, 843–45 (6th Cir.1996).

The same rationale from *Raytheon* applies with equal force in the instant case. Because Adney and Nixon were entirely unaware of both Seay's race and Seay's application for VPA 12205, it would be impossible for Adney's decision to have been motivated by intentional race discrimination against Seay. If no part of Adney's decision turned on Seay's race, then Seay cannot have been subjected to disparate treatment by Adney and TVA in violation of Title VII.

Seay argues that TVA's summary judgment motion should be denied because he can make out the four elements of a *prima facie* claim under the *McDonnell Douglas* test discussed *supra. See Seay,* 339 F.3d at 463. Seay contends he can prove that: (1) he is a member of a protected class of persons by virtue of his race as an African American; (2) he was qualified for the job he sought, VPA 12205; (3) his application for VPA 12205 was denied; and (4) the person selected for the job, Salatka, is white. [Court File No. 122, p. 5].

This argument fails. The *McDonnell Douglas* test is not intended to be applied

in a rigid, mechanical, or ritualistic manner. It is merely a sensible, orderly framework used to evaluate circumstantial evidence on the issue of intentional discrimination. *Hicks,* 509 U.S. at 519, 113 S.Ct. 2742; *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Robinson,* 847 F.2d at 1316. The *McDonnell Douglas* test sets forth one acceptable method of proving a *prima facie* case of intentional discrimination—circumstantial evidence from which a trier of fact can reasonably infer intentional discrimination. *Id.* But the *McDonnell Douglas* test and the *prima facie* elements enumerated by the Sixth Circuit in *Seay,* 339 F.3d at 463, cannot rationally create a reasonable inference of intentional race discrimination based on circumstantial evidence where the decision-maker, Adney, and his advisor/consultant, Nixon, did not have actual knowledge of Seay's race and did not know that Seay had applied for VPA 12205. *Id.; Johnson,* 839 F.Supp. at 1259, *aff'd,* 53 F.3d 331 (Table, text in 1995 WL 242001) (6th Cir.1995). This is why this Court holds that Seay has failed to make out a *prima facie* claim of disparate treatment since he cannot prove the essential element of causation—a causal connection between Adney's decision and Seay's race. In the absence of proof of a causal connection, Seay cannot make out a *prima facie* claim of Title VII race discrimination.

The bottom line is that Adney made a business decision to cancel VPA 12205 and not to fill the position of Methods Team Specialist at the PG–8 level. In Adney's business judgment, it made more practical sense to rotate and assign Salatka to the position at the lower PG–5 level for developmental purposes. This does not constitute a violation of Title VII where there is no evidence that Seay's race was a motivating factor in Adney's decision.

Title VII does not diminish lawful traditional prerogatives of an employer in making business decisions so long as the employer's reasons are not discriminatory in violation of Title VII. *United Steelworkers of America v. Weber,* 443 U.S. 193, 207, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *Hopson,* 306 F.3d at 435; *Wrenn v. Gould,* 808 F.2d 493, 502–03 (6th Cir.1987). It is axiomatic that under Title VII, this Court does not sit as a "super-personnel" board of review to second guess or re-examine an employer's nondiscriminatory business decisions. *Ajayi v. Aramark Business Services, Inc.,* 336 F.3d 520, 532 (7th Cir. 2003); *Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685–86 (8th Cir.2002); *Wells v. Unisource Worldwide, Inc.,* 289 F.3d 1001, 1007 (7th Cir.2002); *Denney v. City of Albany,* 247 F.3d 1172, 1188 (11th Cir.2001); *Feliciano de la Cruz v. El Conquistador Resort,* 218 F.3d 1, 8 (1st Cir. 2000); *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir.2000); *Barbour v. Browner,* 181 F.3d 1342, 1346 (D.C.Cir.1999); *Norris v. Principi,* 254 F.Supp.2d 883, 896 (S.D.Ohio 2003).

Title VII does not require that TVA and Adney make perfect business decisions. Nor does Title VII forbid TVA and Adney from making business judgments that others may disagree with. The issue to be resolved under Count 67 is not whether Adney made a good or prudent management decision. Rather, the critical issue is whether Adney (TVA) intentionally discriminated against Seay on the basis of his race in violation of Title VII. *Stewart,* 207 F.3d at 378; *Hartsel v. Keys,* 87 F.3d 795, 801 (6th Cir.1996); *Batts v. NLT Corp.,* 844 F.2d 331, 337 (6th Cir.1988); *see also Wexler,* 246 F.3d at 865 and n. 11. Seay cannot prove intentional race discrimination under Title VII, and TVA is entitled to summary judgment.

Accordingly, Count 67 is **DISMISSED WITH PREJUDICE**.

### III. *Count 125: Violation of Supplementary Agreement 10 to the Collective Bargaining Agreement—Reassignment Rights*

Seay contends that TVA violated his reassignment rights under Supplementary Agreement 10 which is part of the collective bargaining agreement between TVA and the labor union representing TVA's employees. Supplementary Agreement 10 governs the reassignment rights that eligible TVA employees have when they are subjected to RIF. The agreement provides that a non-temporary employee with ten or more years of TVA service who is selected for separation from his job in RIF may displace another employee "in the same competitive area, but in a different competitive level, by application of reduction-in-force procedures." It further provides that the jobs for which the RIF"d employee is considered for reassignment "are those in the same competitive level as that job the employee last held on a nontemporary basis which has a lower entrance salary than his/her current job."

When Seay was separated (terminated) from service at TVA on September 26, 1997, as a result of a RIF, he was employed in the position of Safety Specialist SD–4. Prior to his promotion to Safety Specialist SD–4, Seay last held the position of Safety Specialist SD–3. Under Supplementary Agreement 10, Seay's reassignment rights extended to Safety Specialist SD–3. At the time his employment with TVA was terminated through the RIF on September 26, 1997, Seay had a right to be reassigned to any then available jobs at TVA in his "same competitive area" as a Safety Specialist SD–3. The same competitive areas applicable to Seay included: (1) Education, Training and Diversity; (2) Human Resources; (3) Labor Relations and Safety; and (4) Strategic Planning.

[Plaintiff's Evidentiary Submission, Vol. 6, Tab 19, Deposition of Jimmy Raines, pp. 36–37, 106].

Viewing the record in the light most favorable to Seay, there is a genuine issue of material fact in dispute whether TVA violated Seay's reassignment rights. The Court has reviewed the deposition of Jimmy Raines ("Raines"). Raines is the General Manager of Human Resources at TVA. There is factual dispute whether TVA had a job available on September 26, 1997, in Seay's "same competitive area" as a Safety Specialist SD–3.

In his deposition, Raines makes two different statements which have generated some confusion and controversy. On page 64 of his deposition, Raines makes an ambiguous statement that can reasonably be interpreted as indicating that TVA had at least one SD–3 position available that Seay would have been eligible for but it was not listed on the TVA retention register. This is discussed by the Sixth Circuit in *Seay*, 339 F.3d at 476. Later in his deposition, Raines testifies at page 98 that there were no positions available at TVA to which Seay had a right to be reassigned.

TVA offers what seems to be one plausible explanation and interpretation of Raines' ambiguous deposition testimony. It may well be that any conflict or contradiction in these different statements by Raines can be adequately explained, clarified, and reconciled by TVA at trial. However, in ruling on TVA's summary judgment motion, this Court is required to consider the record in the light most favorable to Seay. On page 64 of his deposition, Raines makes an ambiguous statement that can reasonably be interpreted as perhaps meaning that TVA had at least one SD–3 position available for which Seay was eligible to be reassigned. This statement by Raines raises a genuine issue of material fact that precludes the Court from

granting summary judgment to TVA on Count 125. It is necessary for Raines' testimony to be further clarified and explained at trial.

### IV. *Conclusion*

Defendant TVA's motion for leave to add two documents to its exhibit list [Court File No. 127] is **GRANTED.**

Defendant TVA's renewed motion for summary judgment as to Counts 67 and 125. [Court File No. 119] judgment motion is **GRANTED IN PART AND DENIED IN PART** as follows. The summary judgment motion is **GRANTED** with regard to Count 67. Count 67 of the plaintiff's amended complaint is **DISMISSED WITH PREJUDICE** pursuant to FED. R. CIV. P. 56.

TVA's motion for summary judgment to dismiss Count 125 (reassignment rights) is **DENIED.** Seay may proceed to trial on Count 125 (reassignment rights). The only claims that remain before the Court for adjudication at trial are Counts 75, 125 (reassignment rights), and 129 of Seay's amended complaint.

SO ORDERED.